■ Louis Baldwin, Appellant-Respondent, v Cablevision Systems Corp., Respondent-Appellant. [888 NYS2d 1]—

Order, Supreme Court, Bronx County (Dianne T. Renwick, J.), entered July 12, 2007, which denied so much of defendant's summary judgment motion to dismiss the claim for employment discrimination, but granted so much of that motion to dismiss the claim based on unlawful retaliation, unanimously modified, on the law, to dismiss the employment discrimination claim insofar as it is based on the allegation that plaintiff was denied promotions due to racial discrimination, and, except as thus modified, affirmed, without costs.

Plaintiff, an African American who held managerial positions from 1992 to 2005 with defendant Cablevision Systems Corp., claims that, as a result of his employer's discriminatory practices, he was passed over for three vice-president positions for which he was as qualified as the successful candidates. Plaintiff also alleges that, after he complained internally about Cablevision's alleged discrimination and then filed this lawsuit, Cablevision retaliated and further discriminated against him by first "constructively" demoting him, next by giving him unfairly negative performance evaluations, and finally by terminating him. In his complaint, plaintiff asserts causes of action for employment discrimination and retaliation in violation of both the State Human Rights Law (Executive Law § 296 *et seq.*) and the New York City Human Rights Law (Administrative Code of City of NY § 8-101 *et seq.*).

Plaintiff now appeals and Cablevision cross-appeals from the July 2007 order which granted Cablevision's motion for summary judgment dismissing the retaliation claims but denied its motion dismissing the discrimination claims.[1] For the reasons set forth below, we modify the order of the motion court by limiting the discrimination claim to plaintiff's termination.

In February 1992, plaintiff began working for Cablevision as director of human resources for the company's New York City operation. He held this position until 1999, when, as part of the reorganization of Cablevision's human resources functions, he was promoted to area director of employee relations for Connecticut, Westchester, and New York City. Plaintiff states that, in his first 11-plus years with Cablevision, he consistently received excellent performance evaluations.

In 2002, plaintiff applied for the position of vice-president of employee and labor relations—Madison Square Garden. However, John Moran, a Caucasian, was hired for the position.

As part of a reorganization of Cablevision's human resources operations, in late 2002 Cablevision eliminated the four area director of employee relations positions, including plaintiff's, and created two new vice-president positions. Cablevision promoted Robert Doodian (a Caucasian), another of the area directors, to one of the new positions (corporate vice-president of employee relations and staffing). Plaintiff alleges that Cablevision never posted nor announced this position. Plaintiff applied for the other new position of vice-president of employee relations for cable and communications, but another area direc-

---

**1.** Supreme Court also denied defendant's motion to dismiss plaintiff's claims based on "after-acquired evidence" that plaintiff allegedly obtained by misappropriating defendant's confidential employment files and e-mails.

tor, Susan Crickmore (a Caucasian), was given the job. Thereafter plaintiff's attorney notified Cablevision by letter addressed to James Dolan, the company's president and CEO, that he had been retained to represent plaintiff in connection with Cablevision's alleged discrimination.

After his area director position was eliminated, plaintiff was appointed to the newly created position of director of human resources of field operations in New York City, which according to plaintiff, constituted a demotion.[2] He remained in this position until he was terminated in July 2005.

In his new position, plaintiff was supervised by Dan Timoney, who in turn reported to Thomas Monaghan, vice-president of field operations for New York City. In June 2003, plaintiff's supervisor for the prior review period gave plaintiff an "Overall Performance Rating" of four for "Exceeded Expected Performance," the second-highest rating. Timoney, plaintiff's new supervisor, wrote that he looked forward to working with him in the coming year.

According to Cablevision, one of plaintiff's primary responsibilities in his new position was to make sure the employees understood that they had an advocate and that their concerns were being heard, to reduce the likelihood that they would turn to a third party, like a union, for intervention. In late 2003, Timoney directed plaintiff to conduct meetings with employees in the New York City area concerning company benefit plans. Timoney believed there was a need to go out and "sell" the plans, but by January 2004, according to Timoney, plaintiff had not executed this directive, and no benefit meetings had been held.

That month, Timoney downgraded plaintiff's overall performance rating from four to three, for "Achieved Expected Performance." Timoney complimented plaintiff's performance in some areas but criticized him for missing deadlines, being "reactive" rather than "proactive," and for other perceived shortcomings. Plaintiff appealed the evaluation but it was not changed.

In April 2004, plaintiff filed this action alleging racial discrimination.

In the January 2005 evaluation of plaintiff's performance in 2004, Timoney gave plaintiff a grade of two, for "Partially Achieved Expected Performance," out of a possible five. Timoney indicated a unionization campaign that Cablevision thwarted in 2004 might have been averted entirely if plaintiff

---

**2.** The fourth area director left the company after her position was eliminated and she was passed over for a vice-president position.

had been more proactive in holding employee meetings in early 2003 concerning the company benefits available to the employees without a union. He also criticized plaintiff's failure to implement supervisor and manager training. Of particular significance was the observation that plaintiff was unwilling to create and implement initiatives that Timoney had requested. Timoney wrote, "The overall review rating is not a reflection of [plaintiff's] inability to do the technical requirements of the job; it is however, a reflection of a lack of leadership and hesitation to support the local management team's vision."

In February 2005, plaintiff wrote to James Dolan to challenge his review, stating that "Dan Timoney treats whites and minorities differently and seems to be making a concerted effort to remove minorities from his immediate management team." He believed he was being "set up for termination," and that "this Performance Appraisal is in retaliation for appealing my January 1, 2004 Performance Appraisal, for complaining . . . about Dan Timoney and for filing a discrimination lawsuit against Cablevision." Dolan did not respond.

In March 2005, Thomas Monaghan replaced Timoney as plaintiff's supervisor. Monaghan testified that one of his primary goals was to avoid another union organizing campaign in the Bronx. As part of this initiative, Monaghan ordered plaintiff and other directors to interact with employees on a daily basis, both informally, such as interacting in the hallways, and formally, such as organizing breakfast meetings. Based on his observations, Monaghan testified that he did not believe that plaintiff had been sufficiently mingling, and so he directed plaintiff to have daily contacts, and to document the details of those meetings.

On July 19, 2005, plaintiff was called into a meeting with Monaghan and Crickmore, and informed that he was being terminated primarily for not interacting with employees, and for providing insufficient detail of the conversations he did have.

Thereafter, Cablevision moved both for an order dismissing plaintiff's discrimination and retaliation claims and for a declaratory summary judgment limiting his damages, if any, based on the "after-acquired evidence" defense (see *McKennon v Nashville Banner Publishing Co.*, 513 US 352, 362 [1995]).

Supreme Court denied Cablevision's motion to dismiss plaintiff's discrimination claims, finding that plaintiff had established a prima facie case of discrimination and that the race-neutral reasons were pretextual both as to the promotion and termination claims.

The court granted Cablevision's motion to dismiss the claims

of retaliation on the ground that the time lapse between plaintiff's complaint to Dolan in September 2003 and his poor evaluation in January 2005 was too great for them to be causally connected, and no other evidence established causation.

Finally, the court denied Cablevision's motion based on after-acquired evidence, because such evidence would not entitle a defendant to summary judgment, but would only limit a plaintiff's damages should the defendant be found liable.

Each party appeals from those aspects of the order which were adverse to it.

In order to make out a claim of racial discrimination, the plaintiff bears the initial burden of making a prima facie showing that the plaintiff is a member of a protected class, was qualified for the position, and was terminated or suffered some other adverse employment action, and that the discharge or other adverse action occurred under circumstances giving rise to an inference of discrimination (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 305 [2004], citing *Ferrante v American Lung Assn.*, 90 NY2d 623, 629 [1997]). After the plaintiff has met his obligation, the burden shifts to the employer to rebut the presumption by setting forth "legitimate, independent, and nondiscriminatory reasons to support its employment decision" (*Ferrante* at 629). If that showing is made, "the plaintiff must prove that the legitimate reasons proffered by the defendant were merely a pretext for discrimination by demonstrating both that the stated reasons were false and that discrimination was the real reason" (*Forrest* at 305).

In response to plaintiff's prima facie showing of discrimination, Cablevision gave race-neutral, facially legitimate reasons for denying plaintiff the three promotions in 2002 and then terminating him in 2005. As for the promotions, Cablevision asserted that the candidates it hired for the positions that plaintiff had sought were more qualified. John Moran, who was hired as vice-president of employee and labor relations—Madison Square Garden, had been the vice-president for human resources with CBS/Viacom Inc. for seven years, and before that, had been the vice-president of human resources and administration with Group W Westinghouse Broadcasting, Inc. Moreover, Moran held a Bachelor's degree in economics, a Master's degree in business administration from the Wharton Graduate Division of the University of Pennsylvania, and a law degree, while plaintiff only had a Bachelor's degree in business administration. Robert Doodian, who was appointed corporate vice-president of employee relations and staffing, had been area director for Cablevision's corporate division and had received outstanding

performance reviews in that position. His appointment to vice-president constituted a promotion within the area of responsibility in which he worked. Finally, Susan Crickmore, who was given the position of vice-president of employee relations for cable and communications had previously been a vice-president of human resources for a chain of retail stores, reported to the chain's chief executive officer, and had prior experience with working directly with a chief executive officer.

The circumstances surrounding all three of these employment actions make it clear that an inference of racial discrimination is unwarranted. Plaintiff has clearly not made the requisite showing that the reasons offered by Cablevision for each of these selections were pretextual. All three of the successful candidates had credentials which justified the favorable treatment of their applications. Based on their credentials, the successful candidates were as qualified as, if not more qualified than, plaintiff. Moreover, although Cablevision did not promote plaintiff to vice-president, it had promoted him to a managerial position in 1999. Without a showing that a plaintiff was passed over for a position due to racial discrimination, this Court should "not sit as a super-personnel department that reexamines an entity's business decisions" (*Dale v Chicago Tribune Co.*, 797 F2d 458, 464 [7th Cir 1986], *cert denied* 479 US 1066 [1987]).

We do find, however, that the statistical evidence raises an issue of fact as to whether Cablevision's reason for firing plaintiff was pretextual. Although Cablevision claims that it fired plaintiff solely because of inadequate performance, plaintiff submits statistical reports which allegedly demonstrate that his termination exemplified a pattern of racial discrimination by Cablevision against black managers. Plaintiff proffers sections of employer information reports that Cablevision filed with the Equal Employment Opportunity Commission. The reports tally the number of Cablevision employees companywide as of the first two weeks of both September 2001 and September 2002, when Cablevision underwent a reorganization and planned "reduction in force." The total employee figures are broken down into categories of occupation—including as "Officials and Managers," which was plaintiff's occupational category—and categories of sex and race. The data indicates that, during the one-year period separating the reports, the number of black "Officials and Managers" at Cablevision fell about 41.6% (from 308 to 180), while the number of white "Officials and Managers" fell only by about 8.1% (from 1,874 to 1,722).

In discrimination cases, "[s]tatistics are valuable and often

demonstrate more than the testimony of witnesses, and they should be given proper effect by the courts" (*State Div. of Human Rights v Kilian Mfg. Corp.*, 35 NY2d 201, 210 [1974] [internal quotation marks and citations omitted]; *see also Murphy v American Home Prods. Corp.*, 159 AD2d 46, 49-50 [1990] ["evidence indicating discriminatory treatment by the employer of employees, other than the plaintiff . . . is highly probative of the employer's actual state of mind"]). Plaintiff's statistics indicate that in the course of a year the number of black officials and managers at Cablevision dropped at more than five times the rate as that of white officials and managers (41.6% versus 8.1%). This disparity supports an inference that the personnel reductions at Cablevision were affected by considerations of race, and suffices to raise a triable issue on the discriminatory termination claim. However, the statistical evidence has no bearing on the issue of why Cablevision failed to promote plaintiff because it only reflects personnel reductions.

The court properly dismissed the retaliation claim. To establish a prima facie case of retaliation, the plaintiff must show participation in a protected activity known to the employer, an adverse employment action based upon that protected activity, and a causal connection between the protected activity and the adverse employment action (*see Forrest*, 3 NY3d at 312-313). The only evidence of a causal connection between the January 2004 evaluation (which plaintiff claims was made in retaliation) and plaintiff's protected acts (i.e., a letter written by his attorney in September 2003) is the evaluation's temporal proximity. We conclude that the events were not temporally proximate enough to satisfy the causality element of plaintiff's retaliation claim (*see Clark County School Dist. v Breeden*, 532 US 268, 273 [2001]). Furthermore, the 2004 evaluation, while less favorable than previous ones, was still favorable overall.

Finally, the court properly held that Cablevision was not entitled to summary judgment or a declaratory judgment based on after-acquired evidence that plaintiff had misappropriated confidential personnel files in violation of company policy (*see generally McKennon v Nashville Banner Publishing Co.*, 513 US at 362-363). Such evidence is not a bar to litigation and does not warrant summary judgment, but only affects the plaintiff's damages if and when the employer is found liable (*McCarthy v Pall Corp.*, 214 AD2d 705 [1995]). Concur—Saxe, J.P., Moskowitz, DeGrasse and Freedman, JJ.

Nardelli, J., concurs as to result only in a separate memorandum as follows: I agree with the determination reached by the

majority, except with regard to its rationale for remanding the matter for trial on the termination claim, i.e., that statistical evidence offered by plaintiff indicates that Cablevision's. reason for firing him was pretextual.

The justification offered by Cablevision for its termination of plaintiff's employment was that he was not "proactive" enough in meeting with employees to listen to their concerns in the hope of averting a unionization campaign, and that he did not meet deadlines or did not provide his superiors with requested information in a timely manner. Plaintiff denies those claims, and claims that the real reason for his termination was racial discrimination. The only evidence he offers to bolster this claim are statistics resulting from a retrenchment at Cablevision three years before his employment was ended.

To the extent these statistics are relevant, they are ancillary to the principal issue which divides the parties—was plaintiff performing his duties competently. Thus, before plaintiff can rely on any statistics, he must first establish that his job performance was satisfactory. It would then be incumbent on Cablevision to establish otherwise in rebuttal. If plaintiff does not meet his burden, the statistics are irrelevant.

This is not a class action involving those employees who were terminated in 2002. It is an action by an individual who was terminated in 2005, notwithstanding his claim that his performance was satisfactory, and did not warrant termination. Concededly, the statistics may be relevant to credibility, or may be probative of animus. In the first instance, however, our remand should make clear that the framed issue is whether Cablevision was justified in terminating plaintiff because of his unsatisfactory performance.