## Silva v Giorgio Armani Corp.

2024 NY Slip Op 30808(U)

March 13, 2024

Supreme Court, New York County

Docket Number: Index No. 159449/2015

Judge: Lyle E. Frank

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. LYLE E. FRANK**

*Justice*

PART **11M**

-----------------------------------------------------------------------------X

FABIO SILVA,

Plaintiff,

- v -

GIORGIO ARMANI CORPORATION, PRESIDIO
INTERNATIONAL, INC.,GIORGIO ARMANI, GIORGIO
FORNARI, LUCINDA ROSSO

Defendant.

-----------------------------------------------------------------------------X

INDEX NO. 159449/2015

MOTION DATE 03/28/2023

MOTION SEQ. NO. 013

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 013) 319, 320, 321, 322, 323, 324, 325, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340, 341, 342, 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376, 377, 378, 379, 380, 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 403, 404, 405, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 418, 419, 420, 421, 422, 423, 424, 425, 426, 427, 428, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 456, 457, 458, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 470

were read on this motion to/for              JUDGMENT - SUMMARY              .

In this action for alleged employment discrimination based on national origin and disability

and for a hostile work environment and retaliation in violation of the New York City Human Rights

Law (Administrative Code of City of NY § 8-101 *et seq*.) (NYCHRL), defendants Giorgio Armani

Corporation (GAC), Presidio International, Inc. (Presidio), Giorgio Fornari (Fornari), and Lucinda

Rosso (Rosso) (collectively, defendants) move, pursuant to CPLR 3212, for summary judgment

dismissing the complaint brought by plaintiff Fabio Silva.

## Factual Background

Plaintiff is of Mexican national origin (NY Cts Elec Filing [NYSCEF] Doc No. 399,

plaintiff's response to statement of material facts, ¶ 10).  He is a 1998 law school graduate, is

**159449/2015   SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
**Motion No.  013**

**Page 1 of 30**

1 of 30

admitted to the bar in California and Washington, D.C. (*id.*, ¶ 14; NYSCEF Doc No. 322, Rosso aff, exhibit B at 2).

GAC, a subsidiary of Giorgio Armani S.p.A. (GA Italy), is a domestic corporation with a principal place of business in New York, New York (NYSCEF Doc No. 399, ¶ 1). Prior to 2015, GAC purchased Presidio's stock and assets, which included the license and the right to use the A|X Armani Exchange (Armani Exchange) mark in the United States (*id.*, ¶ 2). Fornari joined GAC in October 2014 as its Chief Operating Officer (COO) (*id.*, ¶ 3). Rosso was GAC's Senior Vice President of Human Resources and Organizational Development (*id.*, ¶ 5).

By letter dated September 16, 2014, GAC extended an offer of employment to plaintiff for the position of Vice President, Legal Affairs (*id.*, ¶¶ 18-19). The offer letter set plaintiff's base salary at $200,000 and would increase to $225,000 in January 2016 depending upon his performance (NYSCEF Doc No. 352, Rosso aff, exhibit E at 1). The offer letter states that "[t]his letter should be read as only a mutual understanding of employment and is not to be construed as an employment or any other form of legal contract. The company reserves the right to change any part of its compensation plans, policies, procedures, benefits plans and/or organizational structure at any time" (*id.* at 2). Plaintiff accepted the offer on September 17, 2014 (*id.*), and started at GAC on October 15 (NYSCEF Doc No. 399, ¶ 29).

It is not disputed that GAC had never employed anyone as in-house counsel before plaintiff (NYSCEF Doc No. 401, Nicole Wiitala [Wiitala] affirmation, exhibit 2, Rosso tr at 180-183). GAC's then-Chief Executive Officer (CEO), Graziano de Boni, determined and defined the scope of and the budget for the newly created position (NYSCEF Doc No. 452, Rosso reply aff, ¶ 24). The position entailed overseeing all legal matters involving GAC and Presidio (NYSCEF Doc No. 328, Rosso aff, exhibit H). Plaintiff reported directly to GAC's COO, Fornari, and "functionally"

**159449/2015 SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
**Motion No. 013**

**Page 2 of 30**

2 of 30

to Luca Pastorelli (Pastorelli), the Worldwide Director of Legal at GA Italy (NYSCEF Doc No. 352 at 1; NYSCEF Doc No. 399, ¶ 17).

When plaintiff joined GAC, he received a copy of GAC's Associate Handbook, which contained GAC's Anti-Discrimination Policy (NYSCEF Doc No. 399, ¶¶ 30 and 33). Plaintiff executed a form acknowledging that if he experienced or believed he had been treated in a discriminatory manner, he would immediately report it (*id.*, ¶¶ 37-38).

A. Plaintiff's Interactions with Tom Chan

Tom Chan (Chan) is GAC's Chief Financial Officer (CFO), and, like plaintiff, Chan reported to Fornari (*id.*, ¶¶ 44-45). Chan was responsible for overseeing GAC's financial operations (NYSCEF Doc No. 320, Rosso aff, ¶ 54; NYSCEF Doc No. 347, Fornari aff, ¶ 53). Plaintiff and Chan worked together on issues affecting GAC and Presidio, with plaintiff focusing on legal issues and Chan on financial issues (NYSCEF Doc No. 399, ¶ 46).

On November 11, 2014, plaintiff was asked to review a contract between Presidio and Anagrama, a company based in Mexico (NYSCEF Doc No. 332, Rosso aff, exhibit L at 12). Plaintiff completed his review, and the next day, Sherry Chang of Presidio forwarded a copy of the contract to Chan and asked for permission to execute it (NYSCEF Doc No. 399, ¶ 52). Chan, in response, raised an issue about advance payments on the contract, the leverage GAC would have if Anagrama failed to perform, and the practicality of suing in Mexico (*id.*, ¶ 59). Chan ultimately approved the contract (*id.*).

Before Chan approved the contract, he and plaintiff met on November 13 to discuss it (NYSCEF Doc No. 320, ¶ 81). Plaintiff testified that during their meeting, Chan told him "I do not trust Mexicans" twice and said, "I have worked with Mexicans, I don't trust them" (NYSCEF Doc No. 390, Klein affirmation, exhibit R, plaintiff tr at 161). Plaintiff testified that he did not

**159449/2015 SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
**Motion No. 013**

**Page 3 of 30**

3 of 30

[* 3]

correct Chan at the time (NYSCEF Doc No. 400, Wiitala affirmation, exhibit 1, plaintiff tr at 523).

Fornari, who stopped in briefly, asked plaintiff if he had spoken to Anagrama representatives in

Spanish as plaintiff was from Mexico (NYSCEF Doc No. 390 at 273). It was at that point that

Chan learned plaintiff was Mexican (*id.* at 198).

GAC's office was closed between December 23, 2014, and January 5, 2015 (NYSCEF Doc

No. 320, ¶ 74). On December 23, plaintiff emailed Fornari, who was traveling to Italy (NYSCEF

Doc No. 389, Klein affirmation, exhibit Q, Fornari tr at 198), about his interactions with Chan.

Plaintiff wrote that Chan was "not ready to work with an attorney" and focused on irrelevant

matters (NYSCEF Doc No. 336, Rosso aff, exhibit P at 1). Plaintiff complained that "[Chan]

simply does not trust my judgment and I'm too senior and too experienced to be subjected to that"

(*id.*). Plaintiff also wrote:

> "I have to be subjected to his condescension and I [am] always having to rise above
> his mistreatment and patiently explain to him why he is wrong or being impractical.
> In many ways, he thinks that he's a better attorney than I am. This is very typical
> of CFO's that have worked without an in-house counsel for many years. They begin
> to think of themselves as attorneys, and get annoyed when a new in-house attorney
> begins to take over. Tom is no different, but perhaps worse.
>                                                                     …
> I also want to share something with you that I didn't want to, but now I will. You
> may recall the evening that you came into Tom's office and found me there working
> with him on the Anagrama contract. Just before you entered the office, Tom was
> telling me how he doesn't trust Mexicans. I was a bit surprised by that statement
> and attempted to correct him. I told him that I'm sure his concern was really about
> entering into a contract with a vendor outside of the U.S., where we do not have an
> office. I was hoping that he would correct himself and say that I was right. However,
> he instead repeated that he doesn't trust working with Mexicans. Moments after he
> said that, you entered into the office and asked me if I spoke in Spanish with the
> principals of Anagrama, given that I was from Mexico. Tom heard this. I looked
> over at Tom, and he was clearly surprised. He then said 'Oh, so you're a Mexican?'
> It was evident that Tom was very embarrassed by what he had said earlier. I was
> embarrassed for him. However, now I'm beginning to wonder whether my working
> relationship well ever have any hope if he simply does 'not trust Mexicans'"

**159449/2015   SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
**Motion No.  013**

**Page 4 of 30**

(*id.* at 1-2). Plaintiff testified that his interactions with Chan were "peppered with conduct and comments that were, I don't believe, respectful" (NYSCEF Doc No. 400 at 277). Examples of such comments included "why are you doing this instead of that … why didn't you show up with a notepad, why aren't you taking notes. I consider those to be disrespectful" (*id.* at 277-278). Plaintiff believed that Chan treated him like as student and did not allow him to "present my work in the way that I felt as a professional I should. Tom wanted to closely review and dictate, not only what I did, but even how I did it" (*id.* at 292). Plaintiff testified that he did not have an opportunity to observe Chan interacting with any other employees (*id.*).

Fornari read plaintiff's email for the first time on January 5, 2015, when GAC's office reopened, and told Rosso (NYSCEF Doc No. 399, ¶¶ 84 and 88-89). When plaintiff spoke to Fornari that day, Fornari "scolded" him for documenting the incident with Chan and was upset that he had to pull Rosso into the conversation (NYSCEF Doc No. 390 at 162).

Plaintiff met with Rosso on January 5 (NYSCEF Doc No. 338, Rosso aff, exhibit R, plaintiff tr at 222). He described Rosso as "defensive," and she accused him of being "overly sensitive" (NYSCEF Doc No. 400 at 86). Rosso's handwritten notes from their meeting read, "[s]omewhat of a struggle to get CFO to release control. They think of themselves. Asking irrelevant questions … never took a document at face value … [f]eels like I am walking into my professor's class with my homework … disrespectful … shouldn't be asking me a ton of questions" (NYSCEF Doc No. 388 at 416; NYSCEF Doc No. 337, Rosso aff, exhibit Q at 1-2). Rosso also met with Chan, and her notes read, "[q]uality of work hard to tell. Can't yet say it is top-notch. My expectations are high" (NYSCEF Doc No. 388 at 418; NYSCEF Doc No. 337 at 4). Chan recalled discussing his concerns about the Anagrama contract with plaintiff (NYSCEF Doc No. 460, Klein reply affirmation, exhibit C, Chan tr at 220). Chan testified that a Mexican company

**159449/2015 SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
**Motion No. 013**

**Page 5 of 30**

5 of 30

his prior employer had contracted with failed to perform after it received a deposit (*id.* at 221-222). Chan stated that it was more difficult to pursue a company in a foreign country if that company failed to perform (*id.*). Chan could not recall whether he "actually said I don't trust Mexican [sic]" (NYSCEF Doc No. 391, Klein affirmation, exhibit S, Chan tr at 226) but agreed that he might have said it (NYSCEF Doc No. 403, Wiitala affirmation, exhibit 4, Chan tr at 63).

Plaintiff, Chan, and Rosso met to discuss the incident (NYSCEF Doc No. 459, Klein reply affirmation, exhibit B, Rosso tr at 228). Rosso testified Chan was not disciplined because the incident involved an organizational issue, though he was told to be "mindful" (NYSCEF Doc No. 401 at 267-268). After the meeting, plaintiff asked Rosso if he could submit "something for her file so that she could come to the conclusion that I was accepting Mr. Chan's apology," to which Rosso agreed (NYSCEF Doc No. 400 at 528-529). Plaintiff emailed Rosso the following on January 12:

> "After speaking with Tom, seeing his reaction and listening to his explanation, I do accept that this was more about proper word-choice than anything inappropriate. Tom explained that he was showing concern over working with a company in Mexico, where it may be difficult for an American company to enforce its rights. It was not about a general distrust of Mexicans. I do believe that Tom was sincere in his explanation and I've accepted it as true. He and I are prepared to continue working past this, and focusing on building a relationship of mutual trust. Thanks so much again for the great amount of attention and concern you put into this. It revealed to me how seriously the company takes these issues"

(NYSCEF Doc No. 339, Rosso aff, exhibit S). Plaintiff testified that Chan made no other comments about Mexicans (NYSCEF Doc No. 338 at 232), but he believed that Chan's scrutiny of his work became more pronounced (NYSCEF Doc No. 400 at 197).

B. Plaintiff's Request for a Salary Adjustment

On April 1, 2015, plaintiff and Fornari met at plaintiff's request to discuss his performance. While plaintiff assessed his overall performance at a 3.7 out of 4, Fornari rated plaintiff at 3.5

**159449/2015   SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**                    **Page 6 of 30**
  **Motion No.  013**

6 of 30

[* 6]

(NYSCEF Doc No. 399, ¶¶ 104, 107 and 111-112). During their conversation, plaintiff asked Fornari for administrative assistance and a raise (NYSCEF Doc No. 400 at 566-567). Fornari testified that it was not common to give to a raise to someone who had been with GAC for only five months (NYSCEF Doc No. 389 at 290). GAC was more likely to hire an assistant, but Fornari would speak to HR, GAC's new CEO, Giuseppe Marsocci (Marsocci), and Pastorelli (NYSCEF Doc No. 468, Klein reply affirmation, exhibit K, Fornari tr at 287-288; NYSCEF Doc No. 347, ¶ 21; NYSCEF Doc No. 452, ¶ 47). Fornari testified that he advocated hiring an assistant or giving plaintiff a one-time bonus, not a salary increase (NYSCEF Doc No. 389 at 290-291).

On April 7, Rosso met with plaintiff about hiring an assistant (NYSCEF Doc No. 320, ¶ 102). Plaintiff later emailed Fornari, "I would prefer that we first resolve my compensation issue before we turn to hiring assistance for the legal department. I hope that's not being unreasonable, but being properly compensated is a priority for me" (NYSCEF Doc No. 341, Rosso aff, exhibit U at 4). Fornari forwarded plaintiff's email to Rosso and Marsocci the next day (*id.* at 3). Rosso responded, "[plaintiff's] approach is very disappointing" (*id.* at 2).

On April 8, plaintiff and Fornari met to discuss plaintiff's salary request (NYSCEF Doc No. 347, ¶ 28; NYSCEF Doc No. 400 at 571). Plaintiff testified that when Fornari asked him what he would do if he did not receive a raise, he replied, "this is not an easy question for me to answer, because there are only two answers to that question, and neither one of them, I wanted to pursue" (NYSCEF Doc No. 400 at 573). Plaintiff told Fornari that "I either retract my request for an adjustment or I tell you that I'm resigning" (*id.* at 574). After discussing plaintiff's offer letter, Fornari said he did not like the way plaintiff had brought "these things up" and named the complaint plaintiff had made about Chan and his request for a raise (*id.* at 575-576). Plaintiff testified he told Fornari that it was improper to raise his discrimination complaint in a conversation

**159449/2015 SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
**Motion No. 013**

**Page 7 of 30**

7 of 30

[* 7]

about a salary increase (*id.* at 576-577). Fornari then left plaintiff's office (*id.* at 577). Fornari recalled the April 8 meeting differently. Fornari testified that plaintiff was "verbally very violent towards me and he demanded to have a 50,000 a year increase otherwise he would quit" (NYSCEF Doc No. 389 at 295). Fornari summary of the meeting in his email to Rosso and Marsocci reads: "I've just talked to Fabio about his email below. We've an issue here. He's ready to resign because he's feeling undercompensated since the workload he's currently managing is much higher than what we told him once we hired him" (NYSCEF Doc No. 341 at 2).

On April 10, Fornari told plaintiff that GA Italy's COO and Pastorelli were flying to New York to attend an important settlement meeting scheduled for April 15[1] (NYSCEF Doc No. 458, Klein reply affirmation, exhibit A, plaintiff tr at 579; NYSCEF Doc No. 347, ¶ 10). Plaintiff testified that Fornari said he would speak to them about his salary request before asking plaintiff why he had chosen to ask for a raise during a critical time for GAC (NYSCEF Doc No. 400 and 579 and 871). Plaintiff stated that he told Fornari it was reasonable to ask for a raise after his positive review, but Fornari described his actions as blackmail (*id.* at 581-582). Plaintiff also stated that he told Fornari raising his discrimination complaint in a conversation about salary was improper and "could be viewed as retaliatory" (*id.* at 583). Plaintiff testified that he denied telling Fornari he would not attend the settlement meeting if GAC did not confirm his raise (*id.*). For his part, Fornari testified that plaintiff threatened he would not participate in the meeting unless he received a $50,000 raise (NYSCEF Doc No. 389 at 295-296). He informed Pastorelli by email:

> "I just spoke with Fabio. In agreement with Giuseppe and Lucinda, I told him that before giving him a response regarding the salary increase he requested, I would like to discuss it in depth first with you during your visit to NY next week. I reiterated to him that his request is rather pretentious, less than 6 months after being

---

[1] GAC had commenced litigation against the landlord of one its retail locations three weeks earlier, and the judge overseeing the action expected the parties to make "significant efforts" in finding a solution (NYSCEF Doc No. 348, Fornari aff, exhibit A at 1). The parties to the litigation scheduled a settlement meeting for April 15 (NYSCEF Doc No. 349, Fornari aff, exhibit B).

**159449/2015   SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**                                   **Page 8 of 30**
 **Motion No.  013**

hired, and that in any case, there are internal procedures and steps I need to follow which involve a few days of waiting.

His reaction was verbally more violent than I had expected. In sum, he said that if he does not receive confirmation about the adjustment of his pay by Tuesday, then he will not attend the meeting with the lawyers on Wednesday. A kind of blackmail. At this point, given this attitude, I think the matter of the 'start-up bonus' should also be questioned"

(NYSCEF Doc No. 355, Fornari aff, exhibit H at 1). Pastorelli agreed to suspend any bonus discussions (*id.*). Fornari also emailed Rosso and Marsocci that "[plaintiff] wants a confirmation about his salary raise by Monday/Tuesday, otherwise he won't participate (and collaborate) to [sic] this important meeting … with Daniele, Luca and external lawyers. Basically he's blackmailing us" (NYSCEF Doc No. 356, Fornari aff, exhibit I at 1).

Rosso met with plaintiff on April 13 (NYSCEF Doc No. 399, ¶ 140). Plaintiff testified that Rosso essentially "invited" him to leave GAC if he was unhappy (NYSCEF Doc No. 400 at 588-590). Plaintiff also told Rosso about Fornari having raised Chan's discriminatory statement in their conversations about his salary request (*id.* at 590). Rosso testified that when she asked whether plaintiff told Fornari that he would not attend the meeting unless he was compensated, plaintiff replied "yes … I did tell him that. I'm not comfortable going to that meeting unless I feel that I'm compensated correctly for the role" (NYSCEF Doc No. 388 at 304). Rosso then pressed plaintiff on whether he would attend the meeting, but plaintiff failed to give a definitive answer. She stated, "[h]e told me … he would really have to consider it" (*id.* at 308). When told that he was required to attend, plaintiff told Rosso again that he needed to consider it (*id.* at 309). Rosso testified that she "very uncomfortable with the answer" (*id.*). Shortly thereafter, plaintiff emailed Rosso that "[t]he entire issue [about his salary] became heated when Giorgio wanted to know what would happen if I didn't get the salary adjustment … "[m]y natural response was that aside from resignation, I didn't see what else I could do. In retrospect, I should have simply asked if we could

**159449/2015 SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
**Motion No. 013**

**Page 9 of 30**

9 of 30

instead simply focus on the process" (NYSCEF Doc No. 342, Rosso affirmation, exhibit V at 1). Plaintiff wrote that Fornari had raised the incident with Chan, and that plaintiff "[n]aturally … was upset" (*id.*). Plaintiff added, "I want to stay and I want to believe that the company is looking out for my best interests with respect to compensation and stands firm in not having the incident with Tom ever held against me in any way" and "I'll have to leave it in the company's control whether it seeks to reward me" and that he "want[ed] to continue participating" (*id.* at 2). Plaintiff attended the settlement meeting (NYSCEF Doc No. 343, Rosso aff, exhibit W).

## C. Plaintiff's Termination

Fornari testified that the "seeds" for ending plaintiff's employment were "planted" in their April 10 meeting, but Marsocci made the final decision on April 15 and 16 after discussions with HR (NYSCEF Doc No. 468 at 317-318; NYSCEF Doc No. 320, ¶ 113). Fornari testified that he could not trust plaintiff professionally after the events on April 10 (NYSCEF Doc No. 402, Wiitala affirmation, exhibit 2, Fornari tr at 257-258). He averred that plaintiff's conduct between April 8 and April 10 demonstrated immaturity and a lack of professionalism because plaintiff "tried to strong arm GAC" for a raise to which he was not entitled and granting plaintiff a raise would have been inconsistent with GAC's past practice (NYSCEF Doc No. 347, ¶¶ 22 and 75). Rosso believed there was no business justification for giving plaintiff a raise, as she and plaintiff had agreed that his salary would increase in January 2016 (NYSCEF Doc No. 320, ¶ 101). She described plaintiff's decision to "do[ ] his job" as a turning point, and that she could not recommend that GAC continue employing an executive who had threatened not to work unless he received a raise (*id.*, ¶ 122). GAC elected to delay informing plaintiff of its decision to terminate his employment until a replacement had been found (*id.*, ¶ 113). Executives at GA Italy were aware and agreed with the impending change (NYSCEF Doc No. 438, Wiitala affirmation, exhibit 39).

**159449/2015   SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**                    **Page 10 of 30**
**Motion No.  013**

10 of 30

[* 10]

Meanwhile, Rosso had remained in contact with Henry R. Rouda (Rouda) (NYSCEF Doc No. 464, Klein reply affirmation, exhibit G, Rouda tr at 105), who was one of three finalists for the general counsel position along with plaintiff (NYSCEF Doc No. 401 at 99; NYSCEF Doc No. 452, ¶ 30). Rosso reached out to Rouda on April 10, 2015 (NYSCEF Doc No. 429, Wiitala affirmation, exhibit 30), and interviews were scheduled for April 13 and May 26 (NYSCEF Doc No. 464 at 124-125; NYSCEF Doc No. 430, Wiitala affirmation, exhibit 31). GAC extended an offer of employment to Rouda by letter dated June 16, 2015, and Rouda accepted the offer the next day (NYSCEF Doc No. 422, Wiitala affirmation, exhibit 23). The offer letter proposed a start date of July 20 (*id.* at 1). Rouda also signed a non-disclosure agreement under which he agreed that, prior to August 1, 2015, he would not disclose to any third party that he had been offered and had accepted employment with GAC without GAC's consent (NYCSEF Doc No. 436, Wiitala affirmation, exhibit 37). It was decided that Rouda would begin working for GAC offsite for two weeks to familiarize himself with various documents (NYSCEF Doc No. 320, ¶ 116).

On June 29, 2015, plaintiff informed Fornari, Rosso and Chan that his physicians had found a tumor, which was possibly malignant, in his colon (NYSCEF Doc No. 400 at 301 and 303). His physicians performed a colonoscopy on July 1 (NYSCEF Doc No. 383, Klein affirmation, exhibit K), and on July 6, they confirmed the tumor was cancerous (NYSCEF Doc No. 387, Klein affirmation, exhibit O). When plaintiff returned to the office on July 2, Rosso told him that he was terminated (NYSCEF Doc No. 339, ¶ 160). The termination letter stated that GAC had made a business decision in April 2015 to end his employment because of the unprofessional conduct and poor business judgment he had displayed when he sought to exact money from GAC when it was embroiled in litigation (NYSCEF Doc. 343 at 1). The letter further stated that GAC had delayed informing plaintiff of its decision until a replacement was found, and that the replacement would

159449/2015   SILVA, FABIO vs. GIORGIO ARMANI CORPORATION
Motion No. 013

Page 11 of 30

[* 11]

begin on July 15 (*id.*). It also stated that, because of plaintiff having shared news of his medical condition and the need for time to address the condition, "we felt in [sic] only right to tell you now about the business decision that was made in April so that you can make appropriate plans going forward" (*id.*). Plaintiff agreed to prepare a document to assist in the transition, but he did not report to work on July 9, though he had indicated his last day would likely be July 11 or 12 (NYSCEF Doc No. 344, Rosso aff, exhibit X; NYSCEF Doc No. 345, Rosso aff, exhibit Y). On July 14, Rosso sent plaintiff a letter stating that GAC had determined his last date of employment was July 8, 2015, which was the last date he had communicated with GAC (*id.*).

Plaintiff commenced this action on September 15, 2015, by filing and summons and complaint pleading four causes of action under the NYCHRL: (1) hostile work environment; (2) retaliation; (3) unlawful termination based on national origin; and (4) unlawful termination based on disability. Plaintiff later discontinued his action against defendant Giorgio Armani with prejudice (NYSCEF Doc No. 34).

Defendants now move for summary judgment. Submitted on the motion are affidavits from Rosso and Fornari, deposition transcript excerpts, emails, GAC's employee handbook, and other exhibits. Plaintiff relies on deposition transcript excerpts, emails, and excerpts from GAC's employee handbook, among other documents, in opposition.

## Discussion

A party moving for summary judgment under CPLR 3212 "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "This burden is a heavy one and on a motion for summary judgment, 'facts must be viewed in the light most favorable to the non-moving party'" (*William J. Jenack Estate Appraisers*

**159449/2015 SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
**Motion No. 013**

**Page 12 of 30**

*& Auctioneers, Inc. v Rabizadeh*, 22 NY3d 470, 475 [2013], quoting *Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012]).  The moving party's "[f]ailure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (*Alvarez*, 68 NY2d at 324).  If the moving party meets its prima facie burden, the burden shifts to the non-moving party to furnish evidence in admissible form sufficient to raise a material issue of fact (*id.*).

A.  Termination Based on National Origin and Disability

The third and fourth causes of action plead claims for wrongful termination based on national origin and disability, respectively.

Defendants argue that plaintiff has not pled and cannot show that he was treated differently or less well than other employees because of his national origin, as he not identified other similarly situated non-Mexican employees who were treated more favorably.  Defendants also maintain that they have presented a nondiscriminatory reason for his termination.

Plaintiff, in opposition, cites Chan's comments about Mexicans and defendants' failure to follow GAC's internal policies as evidence of pretext.  He asserts that the stated reason for his termination is false and that he never threatened to resign, as he had expressed his commitment to remain at GAC in his April 13 email to Rosso.  Plaintiff also claims that defendants had reached out to Rouda, who had "inferior qualifications" (NYSCEF Doc No. 396, plaintiff's mem of law at 32) days before defendants chose to end his employment.

The NYCHRL makes it an unlawful discriminatory practice for an employer to discriminate against any "person in compensation or in terms, conditions or privileges of employment" because of that person's national origin or disability (Administrative Code § 8-107 [1] [a] [3]).  Under the NYCHRL, "'[n]ational origin' includes 'ancestry,'" and "disability" is defined as a "physical, medical, mental, or psychological impairment" (Administrative Code § 8-

**159449/2015   SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**          **Page 13 of 30**
**Motion No.  013**

13 of 30

102). It is also an unlawful discriminatory practice for any person to aid and abet another in engaging in discrimination (Administrative Code § 8-107 [6]). The provisions of the NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent such construction is reasonably possible" (*Albunio v City of New York*, 16 NY3d 472, 477-478 [2011]).

To prevail on a cause of action for discrimination under the NYCHRL, the plaintiff must prove by a preponderance of the evidence that the plaintiff is a member of a protected class, was qualified for the position, "was treated differently or worse than other employees," and that such "different treatment occurred under circumstances giving rise to an inference of discrimination" (*Harrington v City of New York*, 157 AD3d 582, 584 [1st Dept 2018]). NYCHRL claims are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v Green* (411 US 792 [1973]) (*McDonnell Douglas*) and the mixed motive framework (*Hudson v Merrill Lynch & Co., Inc.*, 138 AD3d 511, 514 [1st Dept 2016], *lv denied* 28 NY3d 902 [2016]). Under *McDonnell Douglas*, the plaintiff bears the initial burden of showing that the plaintiff is a member of a protected class, is qualified for the position, suffered an adverse employment action, and that the adverse action gives rise to an inference of discrimination (*id.* at 514). If the plaintiff meets this burden, the defendant may rebut the presumption of discrimination by proffering a nondiscriminatory reason for the employment action (*id.*). The burden then shifts back to the plaintiff to demonstrate that the defendant's reason was a mere pretext for discrimination (*id.*). The mixed motive framework shares the first two steps with the *McDonnell Douglas* framework (*Hamburg v New York Univ. Sch. of Medicine*, 155 AD3d 66, 73 [1st Dept 2017]) but imposes a lesser burden on the plaintiff on the third (*Melman v Montefiore Med. Ctr.*, 98 AD3d 107, 127 [1st Dept 2012]). On the third step, the plaintiff must produce evidence of pretext (*Bennett v Health Mgt. Sys., Inc.*, 92 AD3d 29, 40 [1st Dept 2011], *lv denied* 18 NY3d 811 [2012) or show that

**159449/2015    SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
**Motion No.  013**

**Page 14 of 30**

14 of 30

"'unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for [the] adverse employment decision'" (*Hamburg*, 155 AD3d at 73, quoting *Melman*, 98 AD3d at 127). Stated another way, the plaintiff must have "been treated less well than other employees because of [a protected characteristic]" (*Williams v New York City Hous. Auth.*, 61 AD3d 62, 78 [1st Dept 2009], *lv denied* 13 NY3d 702 [2009]). Summary judgment dismissing an NYCHRL claim may be granted to the defendant where, "based on the evidence before the court and drawing all reasonable inferences in plaintiff's favor, no jury could find defendant liable under any of the evidentiary routes – *McDonnell Douglas*, mixed motive, 'direct' evidence, or some combination thereof" (*Bennett*, 92 AD3d at 45). The plaintiff may defeat the motion by producing evidence showing that the defendant's reason was false, misleading, or incomplete (*id.*), or "the defendant was motivated at least in part by an impermissible motive'" (*Ellison v Chartis Claims, Inc.*, 178 AD3d 665, 668 [2d Dept 2019], *lv dismissed* 35 NY3d 997 [2020] [citation omitted]).

1.  National Origin

Contrary to defendants' contention, plaintiff has arguably met his "de minimis burden of showing a prima facie case of discrimination" based on national origin (*Basso v Earthlink, Inc.*, 157 AD3d 428, 429 [1st Dept 2018]). Plaintiff, who is Mexican, is a member of a protected class (*see Wheeler v Bank of N.Y. Mellon*, 256 F Supp 3d 205, 215 n 4 [ND NY 2017], citing *Warren v City of Carlsbad*, 58 F3d 439, 442 [9th Cir 1995], *cert denied* 516 US 1171 [1996]), and is qualified for the position (*see Gregory v Daly*, 243 F3d 687, 696 [2d Cir 2001] ["by hiring the employee, the employer itself has already expressed a belief that she is minimally qualified"]). Plaintiff was terminated, and "termination …constitutes an adverse or disadvantageous employment action" (*Ji Sun Jennifer Kim v Goldberg, Weprin, Finkel, Goldstein, LLP*, 120 AD3d 18, 25 [1st Dept 2014]). GAC then hired a non-Mexican attorney as its new general counsel (*see Melman*, 98 AD3d at 115

**159449/2015   SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
**Motion No.  013**

**Page 15 of 30**

15 of 30

[* 15]

[given the plaintiff's minimal prima facie burden, the court assumes that the circumstances surrounding the adverse employment actions sufficient to infer discrimination]).

The burden having shifted, defendants have articulated a legitimate, nondiscriminatory reason for terminating plaintiff, namely his unprofessional conduct. In response to his request for a raise, defendants informed him that GAC did not routinely grant salary increases, especially to those who had worked at GAC for a short period of time. Instead, Fornari and Rosso sought to ease plaintiff's workload by hiring an assistant and attempted to secure a one-time bonus for plaintiff. Plaintiff rebuffed those offers and repeated his request for a salary adjustment. Fornari and Rosso explained that plaintiff then attempted to blackmail GAC by refusing to confirm his attendance and participation at an important settlement meeting and by threatening to resign unless GAC adjusted his salary. Fornari's contemporaneous emails show that he understood plaintiff was ready to resign and wanted confirmation of a raise or else he would not participate in the meeting. Rosso expressed her unease with plaintiff's answer on whether he would attend. Additionally, plaintiff expressed in his April 13 email that his natural response on the salary issue was to resign. Neither Fornari nor Rosso took plaintiff's message as an "idle threat" (*Melman*, 9 AD3d at 115).

Plaintiff, in response, has failed to demonstrate that defendants' stated reason for his termination was pretextual or that he was treated less well than other similarly situated employees because of his national origin (*see Kwong v City of New York*, 204 AD3d 442, 443-444 [1st Dept 2022], *lv dismissed* 38 NY3d 1174 [2022] [granting summary judgment dismissing claim based on national origin]; *Abe v New York Univ.*, 169 AD3d 445, 446 [1st Dept 2019], *lv dismissed* 34 NY3d 1089 [2020] [same]). First, plaintiff points to a single discriminatory comment Chan made about Mexicans, though it was repeated three times in the same conversation. "[A] single comment may be actionable in the proper context" (*Mihalik v Credit Agricole Cheureux N. Am., Inc.*, 715

**159449/2015 SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
**Motion No. 013**

**Page 16 of 30**

16 of 30

F3d 102, 113 [2d Cir 2013]; *Williams*, 61 AD3d at 80 n 30), but the single remark at issue here, "even if made by a decision maker, do[es] not, without more, constitute evidence of discrimination" (*Hudson*, 138 AD3d at 517 [internal quotation marks and citation omitted]). Critically, Chan was not consulted with and did not participate in the decision to terminate plaintiff (*see Sedhom v SUNY Downstate Med. Ctr.*, 2020 NY Slip Op 30881[U], *29 [Sup Ct, NY County 2020], *affd* 201 AD3d 536 [1st Dept 2022]; *Arthur v Standard & Poor's Corp.*, 6 Misc 3d 1033[A], 2005 NY Slip Op 50288[U], *5 [Sup Ct, NY County 2005]). The final decision rested with Marsocci. "Discriminatory motivation may be inferred from, among other things, invidious comments about others in the employee's protected group, or the more favorable treatment of employees not in the protected group" (*Rodriguez v New York City Hous. Auth.*, — AD3d —, 2024 NY Slip Op 01278, *1 [1st Dept 2024] [internal quotation marks and citation omitted]), and here, plaintiff has not offered any evidence to show that Marsocci harbored a discriminatory animus towards Mexicans (*see Pitter-Green v NYU Langone Med. Ctr.*, 223 AD3d 576, 578 [1st Dept 2024] [granting summary judgment, in part, where others involved in the decision to terminate plaintiff had not acted in a discriminatory manner towards her]). Plaintiff also testified that Fornari raised his incident with Chan during salary discussions and that Fornari was "icing" him out for bringing the discrimination complaint (NYSCEF Doc No. 400 at 534). These actions, though, are insufficient to establish that Fornari was influenced by an improper motive as plaintiff has not produced any evidence, either direct, circumstantial, or combination thereof, to show that Fornari shared Chan's alleged distrust of Mexicans (*see Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 308 [2004] [no causal connection between the inappropriate statements and the plaintiff's termination]; *Godbolt v Verizon N.Y., Inc.*, 115 AD3d 493, 494 [1st Dept 2014], *lv denied* 24 NY3d 901 [2014] [no nexus between the remark and the plaintiff's termination]). Similarly, plaintiff has

not produced any direct or circumstantial evidence showing that Rosso was motivated by discrimination based on plaintiff's national origin.

Next, plaintiff challenges defendants' explanation for his termination as false, implausible, and inconsistent. Plaintiff asserts that he never threatened to resign, but his April 13 email suggests otherwise. Though plaintiff wrote that he "want[ed] to stay at the company" and "want[ed] to continue participating," he also acknowledged that he had no option other than to resign and that he would leave it to GAC to determine whether it would "reward" him (NYSCEF Doc No. 342 at 1-2). Plaintiff does not deny having written the email. Plaintiff also does not deny having told Rosso that "he was considering not going [to the meeting] unless we resolved his salary" (NYSCEF Doc No. 388 at 309). Additionally, plaintiff told Fornari that he was an at-will employee who was not contractually bound to GAC (NYSCEF Doc No. 400 at 605) and had specifically mentioned resigning as an option, though he did not wish to pursue it (*id.* at 573-574). Thus, while plaintiff denies having threatened to resign, his testimony and emails show that he expressly referenced resigning as his only option to Fornari and Rosso.

That plaintiff received a positive review before the decision to terminate him was made is insufficient to infer a discriminatory motive (*see Kwong*, 204 AD3d at 444 [receipt of positive performance evaluations not enough to raise a triable issue]; *Gonzalez v EVG, Inc.*, 123 AD3d 486, 487 [1st Dept 2014] [same]). The issue is not whether the decision to terminate his employment was justified, but whether the reason for his termination was false (*see Abe*, 169 AD3d at 447).

Plaintiff also complains that he is not required to identify a comparator, but he is mistaken (*see Lively v Wafra Inv. Advisory Group, Inc.*, 211 AD3d 432, 433 [1st Dept 2022] ["plaintiff failed to allege facts showing that the named comparators were terminated under similar circumstances or that younger employees were treated more favorably"]; *Kwong*, 204 AD3d at

**159449/2015   SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**                    **Page 18 of 30**
**Motion No. 013**

18 of 30

[* 18]

444 ["[p]laintiff presented no evidence of any disparity between defendants' treatment of him and defendants' treatment of employees of other races or ethnicities under similar circumstances"]; *Russell v New York Univ.*, 204 AD3d 577, 593 [1st Dept 2022] ["a City HRL plaintiff must still show that [plaintiff] was treated less well than similarly situated persons who were not members of [plaintiff's protected class"]; *Bennett*, 92 AD3d at 38 ["the task of challenging a defendant's proffered nondiscriminatory reasons … often involves questions such as appropriate comparators and evidence of work performance (and discipline) of others"]). Even though plaintiff was the sole employee in the legal department (*see Pelepelin v City of New York*, 189 AD3d 450, 451 [1st Dept 2020] [reasoning that it was not enough the plaintiff was the sole Russian officer in the unit to infer a discriminatory animus]), he has not identified a single non-Mexican employee who was not terminated after refusing to attend a critical meeting unless GAC met that employee's demand for a raise (*see Rodriguez*, 2024 NY Slip Op 01278, *1).

Nor has plaintiff shown that Rouda is an appropriate comparator. A comparator is someone who is "similarly situated in all material respects" to the plaintiff (*Shah v Wilco Sys., Inc.*, 27 AD3d 169, 177 [1st Dept 2005], *lv dismissed in part, denied in part* 7 NY3d 859 [2006] [internal quotation marks and citation omitted]). "While their circumstances do not have to be identical, there should be a reasonably close resemblance of facts and circumstances. What is key is that they be similar in significant respects" (*id.* [internal quotation marks and citation omitted]; *see also Cooper v Franklin Templeton Investments*, 2023 WL 3882977, *3, 2023 US App LEXIS 14244, *8 [2d Cir, June 8, 2023] [stating that plaintiff and other employees are similarly situated if they are subject to the same discipline standards and engaged in comparable conduct]). As applied here, plaintiff has not demonstrated that he and Rouda are similarly situated in all material respects. To be sure, Rouda identifies as Caucasian and was not diagnosed with cancer while working at

**159449/2015 SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
**Motion No. 013**

**Page 19 of 30**

19 of 30

GAC as its general counsel. Plaintiff, though, has not put forward any evidence that Rouda engaged in the same type of unprofessional conduct as plaintiff (*see Herskowitz v State of New York*, 222 AD3d 587, 590 [1st Dep 2023] [granting dismissal where the plaintiff and the comparator were not similarly situated in all material respects]; *see also Cooper*, 2023 WL 3882977, *3, 2023 US App LEXIS 14244, *8 [comparators engaged in different misconduct than the plaintiff]). In addition, Rouda received his first salary increase more than two years after he began at GAC, and he asked for a raise for the first time in September 2021, more than six years after he was hired (NYSCEF Doc No. 464 at 217 and 221). As such, plaintiff has not established that he was treated less well than other similarly situated employees because of his national origin.

Plaintiff contends that defendants' failure to follow its internal policies before terminating him is indicative of discrimination, but "the mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent" (*Harris v Niagara Mohawk Power Corp.*, 252 F3d 592, 599 [2d Cir 2001] [internal quotation marks and citation omitted]). The plaintiff must establish that the defendant deviated from its internal procedures for discriminatory reasons (*see Ashanti v City of New York*, — AD3d —, 2024 NY Slip Op 01267, *1 [1st Dept 2024]; *DeFreitas v Bronx Lebanon Hosp. Ctr.*, 168 AD3d 541, 542 [1st Dept 2019]). On this point, plaintiff refers to GAC Human Resources Policy No. 2.800, which states that "[a] termination for cause for other than gross mis-conduct should never be a surprise to an associate"[2] (NYSCEF Doc No. 439, Wiitala affirmation, exhibit 40 at 1). Plaintiff maintains that defendants deviated from this policy because he was blindsided by his termination and because they failed to consider "Progressive Performance Counseling guidelines," his past performance record, or his explanation for the alleged offense. The subject

---

[2] The language in the copy of the same policy submitted by defendants in reply (NYSCEF Doc No. 454, Rosso reply aff, exhibit B), differs from the copy submitted by plaintiff.

policy, though, does not state that GAC must consider those factors, only that GAC "*expects …
management will … consider*" them before terminating an employee (*id.*) (emphasis added).

Plaintiff also submits that GAC deviated from its standard practices by secretly hiring
Rouda and requiring him to execute a non-disclosure agreement and to work offsite. Plaintiff,
though, has not cited an internal GAC policy that prohibited such practices (*see e.g. Harding v
Wachovia Markets, LLC*, 541 Fed Appx 9, 12 [2d Cir 2013]). Furthermore, Rosso explained that
GAC wanted Rouda to "hit the ground running" and did not want any interruptions in critical
business or legal deadlines once plaintiff was informed of his termination (NYSCEF Doc No. 320,
¶ 116; NYSCEF Doc No. 455, Rosso reply aff, exhibit C, Rosso tr at 346-347). Importantly, "this
[c]ourt should 'not sit as a super-personnel department that reexamines an entity's business
decisions'" when reviewing employment discrimination cases (*Baldwin v Cablevision Sys. Corp.*,
65 AD3d 961, 966 [1st Dept 2009], *lv denied* 14 NY3d 701 [2010] [citation omitted]).

Plaintiff complains that GAC paid Rouda a higher salary even though Rosso had previously
described Rouda's experience "in legal areas other than real estate … [as] mediocre" (NYSCEF
Doc No. 434, Wiitalla affirmation, exhibit 35 at 5). Plaintiff, though, ignores the remainder of
Rosso's comments. Rosso believed Rouda was "the most senior of the candidates" and "would be
a good fit for a role which is meant to be an [sic] legal executive and strategic partner to the
executive team" before concluding that Rouda "may be too senior for where our legal structure is
today" (*id.*). Additionally, Rouda graduated from law school 12 years before plaintiff and had
served as in-house counsel for a far longer period than plaintiff (NYSCEF Doc No. 456, Rosso
reply aff, exhibit D at 1). Thus, the fact that GAC hired Rouda and elected to pay him more than
plaintiff cannot, by itself, establish that defendants were influenced by a discriminatory motive.
Because plaintiff has failed to demonstrate that the decision to terminate him was pretextual or

**159449/2015   SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
  **Motion No.  013**

**Page 21 of 30**

[* 21]

that discrimination based on national original was a motivating factor (*see Matias v New York & Presbyt. Hosp.*, 137 AD3d 649, 650 [1st Dept 2016]), the third cause of action is dismissed.

2. Disability

"[T]o state a prima facie case of employment discrimination due to a disability under … the City's Administrative Code, a plaintiff must demonstrate that he or she suffered from a disability and that the disability caused the behavior for which he or she was terminated" (*Pimentel v Citibank, N.A.*, 29 AD3d 141, 145 [1st Dept 2006], *lv denied* 7 NY3d 707 [2006]). As is relevant here, cancer can constitute a disability under the NYCHRL (*see e.g. Phillips v City of New York*, 66 AD3d 170, 184 [1st Dept 2009]).

Assuming plaintiff has met his initial prima facie burden, defendants have presented a legitimate, nondiscriminatory explanation for his termination, as discussed above.

Plaintiff, in response, has failed to demonstrate that defendants' proffered reason for his termination was pretextual or that discrimination based on disability was a motivating factor (s*ee Serdans v New York & Presbyt. Hos*p., 112 AD3d 449, 440 [1st Dept 2013]). To begin, plaintiff cannot show that defendants singled him out after he became disabled (*see Hribovsek v United Cerebral Palsy of N.Y. City*, 223 AD3d 618, 620 [1st Dept 2024]), as the evidence demonstrates that the decision to end his employment was made three months before he informed them of his condition (*see e.g. Tihan v Apollo Mgt. Holdings, L.P.*, 201 AD3d 557, 560 [1st Dept 2022], *lv denied* 38 NY3d 913 [2022] [decision to place the plaintiff on improvement plan made before plaintiff's complaint to HR about discrimination]). Plaintiff posits that the acceleration of the date on which defendants told him that he had been terminated evinces a discriminatory motive, but as demonstrated earlier, the decision to end his employment had been made prior to June 2015. And while Rouda is not disabled, Rouda accepted GAC's offer on June 17, 2015, two weeks before

**159449/2015  SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
**Motion No.  013**

**Page 22 of 30**

22 of 30

plaintiff learned of and disclosed his medical condition to defendants. Thus, plaintiff cannot show that defendants chose to terminate him because of his disability (*see e.g. Rizzo-Puccio v College Auxiliary Serv., Inc.*, 216 F3d 1073, 2000 WL 777955, \*4, 2000 US App Div LEXIS 14416, \*11-12 [2d Cir 2000] [lack of evidence that decision to accelerate the plaintiff's discharge was in retaliation for her exercising her Title VII rights]). Last, plaintiff has not identified any other, similarly situated employee outside of his protected class who was treated less well than him. The fourth cause of action is dismissed.

## B. Hostile Work Environment

The first cause of action pleads a claim for hostile work environment based on national origin (NYSCEF Doc No. 1, ¶¶ 55-56).

Defendants submit that plaintiff cannot demonstrate that Chan interacted with plaintiff any differently than with any other employee; Chan did not exercise managerial or supervisory responsibility over him; GAC was unaware of Chan's ongoing conduct so it cannot be deemed to have condoned it; and Chan's comment, when viewed in context, amounts to a petty slight or trivial inconvenience.

Plaintiff counters that Chan treated him less well by subjecting him to heightened scrutiny, criticism and micromanagement because he was Mexican. Plaintiff also argues that defendants are liable because Chan exercised managerial or supervisory responsibility, and they were aware of and condoned Chan's conduct by failing to take corrective action.

To prevail on a cause of action for a hostile work environment under the NYCHRL, the plaintiff must have been treated less well than other employees because of a protected characteristic (*see Pitter-Green*, 223 AD3d at 579; *Suri v Grey Global Group, Inc.*, 164 AD3d 108, 121 [1st Dept 2018]). The severity and pervasiveness of the objectionable conduct is relevant

[\* 23]

on the issue damages, but not liability (*Golston-Green v City of New York*, 184 AD3d 24, 41 [2d Dept 2020]).  That said, the NYCHRL is not a "general civility code" (*Williams*, 61 AD3d at 79 [internal quotation marks and citation omitted]).  Petty slights and trivial inconveniences and "mere personality conflicts will not suffice to establish a hostile work environment" (*Bilitich v New York Health & Hosps. Corp.*, 194 AD3d 999, 1003 [2d Dept 2021] [internal quotation marks and citation omitted]; *Hernandez v Kaisman*, 103 AD3d 106, 114-115 [1st Dept 2012] [actionable conduct falls somewhere between severe and pervasive and petty slights and trivial inconveniences]; *Williams*, 61 AD3d at 80 [affirmative defense where "the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences'"]).  In assessing a hostile work environment claim, the court must look at the totality of the circumstances to determine if the claim involves a "truly insubstantial case" (*Hernandez*, 103 AD3d at 115] [internal quotation marks omitted]).

Under these precepts, defendants have demonstrated that plaintiff cannot show he was treated less well than other employees based on his national origin (*Chin v New York City Hous. Auth.*, 106 AD3d 443, 445 [1st Dept 2013], *lv denied* 22 NY3d 861 [2014]).  At the outset, plaintiff has not identified a non-Mexican employee with whom Chan interacted who was treated more favorably (*see Wolfe-Santos v NYS Gaming Commn.*, 188 AD3d 622, 622 [1st Dept 2020], *affg* 2018 NY Slip Op 32247[U] [Sup Ct, NY County 2018] [dismissing hostile work environment claim where the plaintiff failed to plead facts establishing that she was treated less well than other similarly situated employees]; *see also Marseille v Mount Sinai Health Sys.*, 2021 WL 3475620, *10, 2021 US Dist LEXIS 147442, *27 [SD NY, Aug. 5, 2021, No. 18-CV-12136 (VEC)], *affd* 2022 WL 14700981, 2022 US App LEXIS 29798 [2d Cir, Oct. 26, 2022] [no evidence other than the plaintiff's self-serving testimony that younger, non-disabled Caucasian and/or non-Haitian

**159449/2015   SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**                                    **Page 24 of 30**
  **Motion No.  013**

24 of 30

[* 24]

employees were not subjected to increased criticism, scrutiny and discipline]).  Evidence of Chan's treatment of other employees is relevant (*see Crawford v American Broadcasting Co., Inc.*, 216 AD3d 507, 508 [1st Dept 2023] [the defendant's behavior towards other women relevant to a hostile work environment claim]), and here, plaintiff testified that he was unaware of how Chan interacted with other employees.  Furthermore, Chan made the same discriminatory remark three times in one conversation, but he never said anything about Mexicans at any other time.  Thus, Chan's statement amounts to a mere petty slight or trivial inconvenience (*see Pitter-Green*, 223 AD3d at 578 [single remark not indicative of hostile work environment]; *Kosarin-Ritter v Mrs. John L. Strong, LLC*, 117 AD3d 603, 604 [1st Dept 2014] [isolated remarks were petty slights and trivial inconveniences]; *but see Doran v New York State Dept. of Health Off. of Medicaid Inspector Gen.*, 2019 WL 4735484, *27, 2019 US Dist LEXIS 166830, *82 [SD NY, Sept. 27, 2019, No. 15-cv-7217 (PKC)] [comments that "Russians can't be trusted," criticism of plaintiff's English language skills and criticism about plaintiff's conduct sufficient to withstand summary judgment]).

Plaintiff fails to raise a triable issue of fact in opposition.  Plaintiff alleges that he was treated less well because he was Mexican, but he has not established that he was treated less well than any non-Mexican employee, none of whom he has identified.  Absent evidence that he was treated less well than other employees because of his protected characteristic, plaintiff's hostile work environment claim is conclusory (*see Pitter-Green*, 223 AD3d at 578-579).  In addition, plaintiff asserts that Chan unjustifiably criticized his work and infers that Chan micromanaged him because of Chan's lack of trust in Mexicans (NYSCEF Doc No. 400 at 197).  The record, though, demonstrates that Chan criticized plaintiff's work even before his remark about Mexicans and before he learned of plaintiff's national origin.  Thus, plaintiff's own testimony undermines any connection between Chan's remark and plaintiff's protected characteristic (*see Marseille v Mount*

**159449/2015  SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
**Motion No.  013**

**Page 25 of 30**

25 of 30

*Sinai Health Sys.*, 2022 WL 14700981, \*2, 2022 US App LEXIS 29798, \*4 [2d Cir, Oct. 26, 2022]), or that Chan's conduct stemmed, in part, from an improper motive (*see Etienne v MTA N.Y. City Tr. Auth.*, 223 AD3d 612, 613 [1st Dept 2024] [unfair criticism and disrespect not enough to show that the defendants were motivated by the plaintiff's protected status]). The first cause of action is dismissed. In view of the foregoing, the court need not address the parties' arguments on whether they are liable for Chan's conduct under Administrative Code § 8-107 (13) (b).

C. Retaliation

The second cause of action pleads a claim for retaliation based on national origin. The complaint alleges that defendants retaliated against plaintiff for complaining about discrimination by refusing to adjust his salary and by terminating him (NYSCEF Doc No. 1, ¶¶ 65-66).

Defendants contend that plaintiff cannot meet the elements necessary to prevail on a retaliation claim. Plaintiff submits that his complaint about Chan's inappropriate comment and the close temporal proximity between his complaint and his termination, plus other evidence of defendants' discriminatory animus, suffices to raise an issue on pretext.

It is unlawful under the NYCHRL for an employer to retaliate against an employee for engaging in a protected activity (*Hribovsek*, 223 AD3d at 620). This includes opposing a discriminatory practice prohibited under the NYCHRL (Administrative Code § 8-107 [7]). An employer's retaliatory actions need not result in a materially adverse change to the terms and conditions of the plaintiff's employment, but such actions "must be reasonably likely to deter a person from engaging in protected activity" (*id.*).

On a cause of action for retaliation under the NYCHRL, the plaintiff bears the initial burden of demonstrating that "(1) [plaintiff] participated in a protected activity known to defendant[ ]; (2) defendant[ ] took an action that disadvantaged [plaintiff]; and (3) a causal connection exists

**159449/2015   SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
**Motion No. 013**

**Page 26 of 30**

26 of 30

[\* 26]

between the protected activity and the adverse action" (*Cadet-Legros v New York Univ. Hosp. Ctr.*, 135 AD3d 196, 206 [1st Dept 2015], quoting *Fletcher v Dakota, Inc.*, 99 AD3d 43, 51-51 [1st Dept 2012]; *Brightman v Prison Health Serv., Inc.*, 108 AD3d 739, 740 [2d Dept 2013]). The defendant must "offer[ ] legitimate, nonretaliatory reasons for its conduct" (*Franco v Hyatt Corp.*, 189 AD3d 569, 571 [1st Dept 2020]). In response, "the plaintiff must produce evidence showing that the defendant was motivated, at least in part, by an impermissible motive" (*id.*). A defendant moving for summary judgment dismissing a claim for retaliation "must demonstrate that the plaintiff cannot make out a prima facie claim of retaliation or, having offered legitimate, nonretaliatory reasons for the challenged actions, that there exists no triable issue of fact as to whether the defendant's explanations were pretextual'" (*Brightman*, 108 AD3d at 740-741 [citation omitted]).

As applied here, defendants' argument that plaintiff did not engage in a protected activity is unconvincing. On December 23, 2014, plaintiff complained to Fornari about Chan's comment about Mexicans (*see Albunio*, 16 NY3d at 479 [reasoning that the plaintiff opposed discrimination when she complained that her supervisor's treatment of a co-worker was wrong]; *McGuinness v Concentric Health Care LLC*, 116 AD3d 527, 529 [1st Dept 2014] [human resources director viewed the plaintiff's letter as a complaint about age discrimination]). Defendants' assertion that plaintiff's complaint had been resolved does not negate the fact that he had lodged a complaint. That said, the temporal proximity between the date plaintiff lodged his complaint and April 15, 2015, the date on which defendants chose to terminate his employment, is too great to infer a causal connection between the protected activity and the disadvantageous employment action (*see Brown v City of New York*, 185 AD3d 410, 411 [1st Dept 2020] [three-month window insufficient]; *Baldwin*, 65 AD3d at 967 [four-month period insufficient]; *but see Herskowitz*, 222 AD3d at 588

**159449/2015 SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
**Motion No. 013**

**Page 27 of 30**

27 of 30

[four-month gap within temporal range for retaliation claim under Executive Law § 296]). Moreover, defendants have presented a legitimate, nonretaliatory explanation for his termination (*see DeFrancesco v Metro-North R.R.*, 112 AD3d 445, 445-446 [1st Dept 2013]). Defendants explained that GAC did not normally grant employees raises, especially to those who had been employed for less than six months, that plaintiff's salary was set forth in his offer letter, and that plaintiff was terminated because of his unprofessional conduct.

Plaintiff, however, has raised a triable issue of fact whether defendants retaliated against him for complaining about discrimination (*see Sandiford v City of N.Y. Dept. of Educ.*, 22 NY3d 914, 916-917 [2013]; *Cancel v Global Fertility & Genetics, Inc.*, 202 AD3d 472, 473 [1st Dept 2022]). First, contrary to defendants' assertion, no provision in plaintiff's offer letter precluded him from seeking a salary adjustment. The relevant portion of the letter stated that plaintiff would receive a raise in January 2016 if he met performance expectations. The letter did not expressly prohibited plaintiff from seeking a raise, as the last sentence states that GAC reserved the right to change its compensation plans and policies at any time.

Second, during their April 8 conversation, Fornari raised the incident between plaintiff and Chan, an incident which plaintiff claims Fornari had previously scolded him about (*see Anderson v New York City Health & Hospitals Corp.*, 2020 WL 2866960, *29, 2020 US Dist LEXIS 36772, * 91 [SD NY, Mar. 2, 2020, No. 16-CV-1051(GBD)(KHP)], *report and recommendation adopted* 2000 WL 1528101, 2020 US Dist LEXIS 56234 [SD NY, Mar. 31, 2020, No. 16-CV-1051(GBD)(KHP)] [evidence of the defendants' disapproval about the plaintiff's discrimination complaints sufficient to raise a triable issue on retaliation]). Such conduct "could have a 'chilling effect' on future discrimination complaints" (*Bond v New York City Health & Hosps. Corp.*, 215 AD3d 469, 470 [1st Dept 2023] [citation omitted]; *see also Melendez v New York City Tr. Auth.*,

**159449/2015   SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
**Motion No.  013**

**Page 28 of 30**

[* 28]

28 of 30

204 AD3d 542, 544 [1st Dept 2022]), since plaintiff's request for additional compensation was wholly unrelated to his discrimination complaint. A second conversation took place on April 10 during which plaintiff claims that he informed Fornari again that it was improper to raise his discrimination complaint in their conversation about salary. Shortly after that conversation, Fornari emailed Pastorelli that "the matter of the 'start-up bonus' should … be questioned" (NYSCEF Doc No. 355 at 1). On April 13, plaintiff told Rosso about Fornari's comments. The decision to end his employment was made only two day later. Arguably, a jury could reasonably conclude that such conduct would "likely deter a person from engaging in a protected activity" (Administrative Code § 8-107 [7]) because defendants suspended moving forward with awarding plaintiff a one-time bonus and terminated him days later (*see Tirschwell v TCW Group Inc*., 194 AD3d 665, 666 [1st Dept 2021] [triable issue whether there was a causal connection between the decision to terminate plaintiff and his HR complaint made nine days earlier]).

Defendants, in reply, offer Rosso's testimony where Rosso explained what Fornari had told her about why he raised the incident involving Chan with plaintiff (NYSCEF Doc No. 459 at 314), but such testimony is inadmissible hearsay.

Thus, in viewing the evidence in the light most favorable to plaintiff as the non-moving party, as this court must (*see Vega*, 18 NY 3d at 503), the court is constrained to deny the motion as to the second cause of action.

Accordingly, it is

ORDERED that the motion of defendants Giorgio Armani Corporation, Presidio International, Inc., Giorgio Fornari, and Lucinda Rosso for summary judgment is granted to the extent of granting summary judgment dismissing the first, third and fourth causes of action, and the first, third and fourth causes of action are dismissed, and the balance of the motion is denied.

**159449/2015   SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
**Motion No.  013**

**Page 29 of 30**

29 of 30

20240313141446LFRANK924BB7484E2D4E1AADEC9BC66A23BF73

**3/13/2024**
**DATE**

**LYLE E. FRANK, J.S.C.**

**CHECK ONE:**    ☐ CASE DISPOSED    ☒ NON-FINAL DISPOSITION

☐ GRANTED    ☐ DENIED    ☒ GRANTED IN PART    ☐ OTHER

**APPLICATION:**    ☐ SETTLE ORDER    ☐ SUBMIT ORDER

**CHECK IF APPROPRIATE:**    ☐ INCLUDES TRANSFER/REASSIGN    ☐ FIDUCIARY APPOINTMENT    ☐ REFERENCE

**159449/2015   SILVA, FABIO vs. GIORGIO ARMANI CORPORATION**
**Motion No.  013**

**Page 30 of 30**