■ KIM McGUINNESS, Respondent-Appellant, v CONCENTRIC HEALTH CARE LLC et al., Appellants-Respondents. [984 NYS2d 34]—

Order, Supreme Court, New York County (Ellen M. Coin, J.), entered March 26, 2013, which, to the extent appealed from, denied so much of defendants' motion for summary judgment as sought to dismiss the claim for age-based discrimination in violation of the New York City Human Rights Law, and granted so much of the motion as sought to dismiss the claim for retaliation, modified, on the law, to deny the motion as to the retaliation claim, and otherwise affirmed, without costs.

Defendants failed to demonstrate that they did not discrimi-

nate against plaintiff on the basis of her age (*see Melman v Montefiore Med. Ctr.*, 98 AD3d 107, 113-114 [1st Dept 2012]). Plaintiff, who was 49 when she was hired by defendant Concentric Health Care LLC, was among the oldest of Concentric's approximately 70 employees, was qualified for her position of billing manager, and was subjected to a disadvantageous employment action, i.e. termination. Defendant Ken Begasse, Jr. (Junior), a principal of Concentric, testified, in effect, that Concentric, an advertising agency serving the pharmaceutical industry, preferred to hire younger workers because they tended to be cheaper and advertising is generally a "young industry."

Defendants contend that they terminated plaintiff because they were in financial trouble and their independent consultant recommended terminating plaintiff and replacing her with an employee whose annual salary would be $40,000 less than hers. However, the independent consultant made this recommendation, and others, in February 2009, and, although defendants terminated a number of people based on these recommendations, they did not terminate plaintiff until November 2009, some nine months later. Moreover, Junior and defendant Michael Sanzen, another of Concentric's principals, testified that, in the months after the consultant made his report, new employees were hired and at least one existing employee was given a $20,000 raise. Thus, issues of fact exist as to whether defendants' proffered explanation of financial distress is pretextual (*see id.*).

Issues of fact also exist as to whether defendants' proffered explanation of poor performance is pretextual. The only documentary evidence of poor performance is a negative review that plaintiff received in September 2009, and there is evidence that, by this time, defendants had already decided to terminate her. Indeed, the review prepared by plaintiff's immediate superior, Concentric's comptroller, was only mildly critical of plaintiff; defendant Ken Begasse, Sr. (another of Concentric's principals) intervened and added extensive negative comments. In an earlier employee review (December 2007), plaintiff had been lauded as "an outstanding professional with vast experience and very high standards," who "keeps the company's interest foremost in her mind," and "always seems to get the work done and done properly."

Defendants failed to demonstrate, in support of dismissing the retaliation claim, that plaintiff did not engage in a protected activity (*see Fletcher v Dakota, Inc.*, 99 AD3d 43, 51-52 [1st Dept 2012]). In a May 2009 letter, plaintiff complained to Concentric's human resources (HR) director that she was being

"scrutinized and held to a higher standard" because she is not "20 or 30 years of age" and does not like to drink alcohol. She also complained that "Concentric's culture is such that if you aren't 20 or 30 years of age and don't have the desire to drink alcoholic beverages, you simply don't fit [in] . . . I am the sole woman employed at Concentric who doesn't fit into the frat like atmosphere with the exception of Ken Sr. (in relation to age)." Although the dissent characterizes this letter as plaintiff's expression of concern that the company is engaged in unethical business practices, the HR director viewed it as an "age discrimination documenting complaint[ ]." Thus, at the very least, issues of fact exist as to whether plaintiff's letter constitutes a complaint about age-related bias and was therefore a protected activity (*see Albunio v City of New York*, 16 NY3d 472, 479 [2011]). Concur—Sweeny, Gische and Clark, JJ.

Tom, J.P., and DeGrasse, J., dissent in part in a memorandum by DeGrasse, J., as follows: I respectfully dissent because, in my view, the motion court properly granted defendants' motion for summary judgment with respect to the claim of unlawful retaliation in violation of the New York City Human Rights Law (the City HRL) (Administrative Code of City of NY § 8-107 [7]). Where pertinent, the City HRL provides that "[i]t shall be . . . unlawful . . . to retaliate . . . in any manner against any person because such person has . . . opposed any practice forbidden under this chapter" (*id.*). In order to make out a claim of unlawful retaliation under the City HRL, a plaintiff must establish "that (1) she has engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered an adverse employment action based upon her activity, and (4) there is a causal connection between the protected activity and the adverse action" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 312-313 [2004]).*

Here, plaintiff claims to have engaged in a protected activity by making complaints in a May 18, 2009 letter that she delivered to Rena Martinez, defendant Concentric Health Care, LLC's human resources director, and Robert Gomes, its senior vice president and controller. I disagree with the majority's conclusion

* After *Forrest* was decided, the New York City Council enacted the Local Civil Rights Restoration Act of 2005 (Local Law No. 85 [2005] of City of NY), which requires that the City HRL be construed more broadly than and separately from its state and federal counterparts. In *Fletcher v Dakota, Inc.* (99 AD3d 43 [1st 2012]), this Court stated that the City Council "expressly rejected *Forrest's* application to claims brought under the City HRL" (*id.* at 52 n 2). Nonetheless, the definitions of retaliation under *Forrest* and *Fletcher* are indistinguishable with respect to the City HRL (*see Fletcher*, 99 AD3d at 51-52).

that the letter constituted a complaint about age-related bias and was therefore a protected activity. The letter did not set forth any grievance about age discrimination or any other practice forbidden by the City HRL. Instead, plaintiff complained about business practices she considered unethical and what she described as Concentric's "frat like atmosphere" that made her feel uncomfortable. Contrary to the majority's interpretation, plaintiff did not state in the letter that she was scrutinized and held to a higher standard because of her age. In that regard, the letter reads as follows: "I, on the other hand, am always here on time, never call in sick, certainly never had a day I couldn't function due to the after effects of excessive drinking, always complete my work in a timely fashion, strive for perfection with every facet of my job, work late when necessary, etc. *One would think this would be a partner's dream employee yet I am scrutinized and held to a higher standard. Why? I leave at 5:00 p.m. when my work is completed*" (emphasis added).

Although the letter expressed grievances, it did not constitute protected activity. The term "protected activity" refers to measures taken to protest or oppose statutorily prohibited discrimination (*see Serdans v New York & Presbyt. Hosp.*, 112 AD3d 449, 450 [1st Dept 2013]; *see also McKenzie v Meridian Capital Group, LLC*, 35 AD3d 676, 677 [2d Dept 2006]). The tenor of the letter is shown by its content as well as plaintiff's deposition. When questioned about her reasons for issuing the letter to Martinez and Gomes, plaintiff gave the following testimony:

"Q. So I believe you just answered in response to my question, which was did you take any action to protect your job, and your answer is that you wrote a memo to Rena, and that was with the express purpose of protecting your job, correct?

"A. It was to express what was going on and my concerns about what was going on in Concentric, and being asked to do fraudulent billing and things that I'm uncomfortable doing, illegal acts . . .

"Q. Why would you have cc'd Mr. Gomez [sic] on this letter?

"A. Because I still go back to my career in advertising, and any SVP comptroller, in my opinion, should be aware when these type [sic] of fraudulent activities are going on with respect to finance. And I couldn't wrap my brain around how someone with that title could not be concerned about that. It was just mind-boggling to me.

"So I was once again trying to reach out to him, being Rob, to understand exactly what I was being asked to do and how illegal it was, fraudulent it was, that I couldn't believe that an SVP

comptroller could condone this type of mandate from a partner to do these types of things to your [sic] client."

Plaintiff is clearly in the best position to interpret her own writing. Plaintiff's testimony and the letter itself demonstrate that she made no complaint about age discrimination. The majority therefore misplaces its reliance on the inconsequential fact that after receiving the letter, Martinez stated in a memorandum that Concentric's counsel "should be informed of in general age discrimination documenting complaints etc [sic]."

For the reasons stated by the majority, summary judgment was properly denied with respect to the age discrimination cause of action. I would therefore affirm the order entered below.