**Roberson v New York City Health & Hosp. Corp.**

2024 NY Slip Op 34251(U)

November 30, 2024

Supreme Court, New York County

Docket Number: Index No. 151841/2023

Judge: J. Machelle Sweeting

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 62

--------------------------------------------------------------x

DELICE ROBERSON,

                                        Plaintiff,

                                                            Index No.:151841/2023

                        -against-

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION and PAUL A. ALBERTSON,

                                                            **DECISION AND ORDER
                                                            ON MOT. SEQ. #001**

                                        Defendants.

--------------------------------------------------------------x

In this action for employment discrimination, defendants New York City Health and

Hospitals Corporation ("NYCHHC") and Paul A. Albertson ("Albertson") (collectively

"defendants") move, pursuant to CPLR 3211 (a) (2) and 3211 (a) (7), to dismiss the complaint.

## **BACKGROUND**

Plaintiff Delice Roberson ("Roberson"), a self-identified Black female (complaint, ¶ 1),

alleges discrimination and retaliation based on her race, gender and disability.  According to

Roberson, NYCHHC was her former employer and Albertson was her former supervisor.  She

alleges that she worked for NYCHHC as a Category Director in the Supply Chain Services

Department, where she was one of several who were supervised by Albertson.

Roberson alleges that in 2013 Albertson offered her a position in the new Supply Chain

Services division.  She further alleges that she told Albertson that she would only take the job if

he could get her a 20% increase in salary, and that Albertson told her that he would "try" to get

[* 1]

her a 15-20% increase (complaint, ¶ 14). In 2017, based upon Albertson's request, Roberson's salary was increased from $124,538 to $135,501—an 8.8% increase (id., ¶¶ 60-61).

Roberson's initial salary in the position was $112,796, and when she left the position, her salary was $145,561. Plaintiff alleges that between 2013 and 2021, she received seven pay raises, amounting to a 29% pay increase earned under Albertson's supervision, but these increases were based upon "a clear lack of any systematic or equitable evaluation and promotion of employees" (complaint, ¶ 28).

Roberson further alleges that in 2019 she met Yelena Grinberg ("Grinberg") who told Roberson that she was making $80,000 annually in her last job and was hired to work for NYCHHC for $135,000. Roberson alleges that Grinberg had less experience than she did, had the same responsibilities as Roberson and had only worked in food service previously as a nutritionist and, therefore, the only reason Grinberg was given that initial salary is because she is white.

Roberson states that "numerous similarly situated white, non-disabled male colleagues, as well as at least one white, non-disabled female colleague, where paid more than [she was]" (complaint ¶¶ 32-38, 44-55, 79-85, 181-185). Roberson alleges that she made numerous requests for equal pay that were either ignored or delayed (complaint, para 58-61). Roberson asked for a parity assessment to investigate the race and gender pay disparities that Roberson believed were operating but this request was denied (complaint ¶¶ 135-137).

According to Roberson's allegations, after she complained about NYCHHC's gender-based and race-based pay disparities, Albertson created "a hostile work environment for [Roberson]". Roberson further alleges that "the harassment took an emotional toll" on her and in October 2020, she took a medical leave. In December 2020, she filed a charge of discrimination

with the U.S. Equal Employment Opportunity Commission ("EEOC"). In January 2021, Roberson was "constructively discharged, as she 'knew that she could not return to a workplace in which she, as a Black woman, had been subjected to extreme pay disparity in favor of her white male colleagues, had been refused equal pay from her supervisors . . . and had been retaliated against for reporting race and gender discrimination'" (complaint, ¶ 188).

Included in Roberson's complaint is a narrative of a "FOIL Production Spreadsheet" that reflects FOIL information that Roberson received in response to her "request for all salaries and salary increases of her colleagues in her department from October 2013 to November 17, 2020" (complaint, ¶ 163). The FOIL information includes names of employees, the "effective date," their annual salary and the percentage increase. The spreadsheet does not include the unit in which the employee worked, or their title or responsibilities.

In her complaint, Roberson concludes:

> "Plaintiff received total raises from $105,417 to $145,561 during the nine-year period from 2012 to 2020, while VP Albertson received total raises from $200,000 to $312,592 during the six-year period from 2014 to 2019; Co-worker Tallbe received total raises from $110,000 to $205,000 in a comparable period; and Co-worker Amora received total raises from $121,000 to $211,259, including four 10% increases and one 20% increase"

(complaint, ¶ 169).

In her complaint, Roberson additionally explains that she suffered from three herniated discs during her time working for defendants, but that this condition did not affect her ability to do her job. She recounts an incident that took place on August 8, 2020, during which she was pressured to do a "walk-through" of some of NYC HHC's facilities. According to her allegations, Roberson was unable to do the walk-through on that particular day because she had been walking a significant amount during the previous days and was not prepared to engage in this type of activity on that day. It is Roberson's position that if she had notice, she would have prepared that

Page **3** of **31**

day for a walk-through by taking muscle relaxants. According to Roberson, "AVP Redwood responded, insisting that Plaintiff, in declining to do that walk-through, was 'physically unable to perform a critical function of [her] job,' and that she would reach out to Human Resources the next day to share her concerns" (memo in support, exhibit C at 34). Ultimately, Roberson alleges that this treatment, specifically "AVP Redwood's unwillingness to accommodate Roberson's back condition on that day," (*id.* at 35) amounted to retaliation for Roberson's complaints for equal pay, and discrimination because of her disability. AVP Redwood's unwillingness to accommodate Plaintiff's back condition on this day was, upon information and belief, retaliation for Plaintiff's complaints and demands concerning Defendant NYCH+H's practices of denying her and others equal pay, and also constituted discrimination against and harassment of Plaintiff because of her disability.

Roberson's EEOC complaint, filed December 21, 2020, tolled her state claims during the pendency of the EEOC proceeding. On June 24, 2021, Roberson filed a case in this court, alleging both federal and state claims. NYCHHC removed this action to federal court on October 27, 2021. The federal action was dismissed on February 1, 2023 without prejudice to Roberson's state claims, which she originally brought in this court as against NYCHHC on October 18, 2021. Roberson filed an amended complaint, including Albertson as a named defendant, on February 27, 2023.

Roberson's 2023 complaint contains six causes of action: (1) race discrimination in violation of the New York State Human Rights Law "(NYSHRL") and the New York City Human Rights Law ("NYCHRL"); (2) Gender Discrimination in violation of the NYSHRL and the NYCHRL; (3) retaliation in violation of the NYSHRL and the NYCHRL; (4) disability discrimination in violation of the NYCHRL; (5) unequal pay in violation of the New York Equal

Page **4** of **31**

[* 4]

Pay Law; and (6) retaliation in violation of the New York Labor Law. The 2021 complaint alleges the same six causes of action, however, the first through the third causes of action are additionally alleged as violations of Title VII of the Civil Rights Act, 42 USC § 2000e, and the fifth and six causes of action are additionally alleged as violations of the Equal Pay Act of 1963.

Defendants now move, pursuant to CPLR 3211 (a) 1, (a) 5, and (a) 7, to dismiss the complaint.

## DISCUSSION

### 1. Roberson's Equal Pay Act Claims

Defendants argue that Roberson's New York Equal Pay Act claim, pursuant to New York Labor Law ("NYLL") § 194, that charges that defendants violated Roberson's right to be paid the same as male and white employees performing equal work, require her to plead and prove that she "received less pay than appropriate comparators because of her gender" (memo in support at 8). According to defendants, Roberson is unable to establish this because the parties in this action already litigated, in the Federal Court action, the identities of the proper comparators for Roberson's claim and the Federal Court ruled that the only proper comparator was Grinberg, a female.

The New York Equal Pay Act, NYLL § 194 states, in part, that:

> "No employee with status within one or more protected class or classes shall be paid a wage at a rate less than the rate at which an employee without status within the same protected class or classes in the same establishment is paid for: (a) equal work on a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions, or (b) substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions . . . ."

[* 5]

The Equal Pay Act, 29 USC § 206 (d) (1), "prohibits employers from discriminating between employees on the basis of sex by paying higher wages to members of the opposite sex for 'equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions'" (*Aldrich v Randolph Cent. School Dist.*, 963 F3d 520, 523-524 [2d Cir 1992][quoting 28 USC § 206 (d)(1)]).

On these facts, defendants argue for the applicability of the "law of the case" doctrine, as these are the same litigants and the same claim that appeared in the Federal Court action. In opposition, Roberson argues that the law of the case doctrine does not apply as this action is separate and distinct from the one Roberson commenced in Federal Court.

In opposition, Roberson argues that NYLL § 194 claims are not limited to gender disparity, instead, the statute prohibits pay disparity on the basis of any protected class status, and, therefore, defendants' contention that Roberson may only pursue female comparators under the NYLL is wrong. Further, Roberson argues that the law of the case doctrine does not apply as this is a separate and distinct case from the previous federal case between the parties.

Defendants have annexed to their motion the transcript of the oral argument supporting the Honorable Denise Cote's determination concerning limiting discovery to a single comparator, Grinberg (the Transcript). The issue before Judge Cote was the scope of discovery with respect to comparators. The parties were specifically addressing discovery concerning "the appropriate comparators [] for the years 2014 through 2020 [sic] the people who served as category directors or served in that function" (memo in support, exhibit B at 4; NYSCEF Doc. No. 009).

[* 6]

According to the Transcript, during that time, Roberson reported directly to Albertson, but she also reported to Joe Wilson and Mercedes Redwood. Roberson and Grinberg were the only category directors working in "Supply Chain Professional Service Contracts," who both reported to Mercedes Redwood during that time (memo in support, exhibit B at 13; NYSCEF Doc. No. 009). Mercedes Redwood reported to Albertson (*id.*). Four divisions reported to Albertson (*id.* at 14).

As reflected in the Transcript, defendants argued that there were many people that held the category director functional title, but the responsibilities were not the same. In assessing Roberson's cause of action under the Equal Pay Act and Labor Law 194, defendants' further argued that it is important to understand the responsibilities of the individual who held the title category director. Defendants explained to Judge Cote that Roberson and Grinberg both worked on support services, whereas other contract directors worked in medical surgery. Those in medical surgery had to have "strong knowledge of the products and procedures performed in the OR, cardiac cath, EP cath, interventional radiology, orthopedics, and sterile processing departments is a must" (*id.* at 17). Roberson's position required "strong knowledge of the products and procedures, performed on the nursing floors, emergency department, OBGYN department, pediatrics department, ambulatory care facilities, and other nonsurgical departments are a must" (*id.* at 17).

Plaintiff's Declaration, paragraph 7: "With my ten-year background in telecommunications and hospital operations, Paul asked me to fill the role of business category director, which included contracts for managed print, interpretation services, office supplies, scanning, snow removal, landscaping, cellular phones, and other business- and operations-related needs." And that, your

[* 7]

Honor, plaintiff is describing her own duties and responsibilities as a business category director unrelated to the ones that we mentioned before."

During oral argument, Judge Cote reviewed organizational charts related to Roberson's employment at NYCHHC and heard argument on Roberson's responsibilities, her supervisors and which colleagues engaged in the same or similar duties as Roberson. For example, defendants' counsel argued before Judge Cote that Roberson's title, category director, was held by other employees who had significantly different job responsibilities:

> "There were many people that held category director functional title. What's important is what the individual who held that title had as responsibilities. We cited a few examples in our letter. Just to repeat one for you here, your Honor, there's periop category director, and that position required strong knowledge of products and procedures performed in the OR and various other hospital functions that would be required. Those are not present in plaintiff's job description"

(Transcript at 15).

Judge Cote concluded that, as a result of the parties' presentations orally, and based on the materials presented, "that there is a single comparator in this lawsuit and that the discovery obligations that will accompany the identification of that single comparator are therefore to be enforced and followed" (*id.* at 20-21). Judge Cote continued: "The plaintiff cannot suggest that she can fill these other positions that functionally are described as category director by relying on someone else's knowledge and expertise when the job descriptions themselves require personal knowledge and expertise for the particular task" (*id.* at 21). On this ground, Judge Cote granted the defendants' application and deemed Grinberg the sole comparator involved in Roberson's Equal Pay Act claim.

[* 8]

"Once a point is decided within a case, the doctrine of law of the case makes it binding not only on the parties, but on the court as well. No other judge of coordinate jurisdiction may undo the decision" (Siegel-NY Practice, Section 448, Law of the Case, citing *State of NY Higher Educ. Services Corp. v Starr*, 158 AD2d 771, 772 [3d Dept 1990] ["[The Law of the Case] doctrine, applying exclusively to questions of law, makes a legal determination in a given case binding not only on the parties, but on all other judges of coordinate jurisdiction"]).

Since the doctrine of res judicata technically requires a final judgment on the merits in one action and an attempted re-litigation in a second, it has no application within an action. The doctrine of the "law of the case" was devised to close that gap. It applies to various stages of the same action or proceeding and its purpose is to avoid the re-injection of issues already determined within it (Siegel-NY Prac Sec 448 "Law of the Case").

Like claim preclusion and issue preclusion, preclusion under the law of the case contemplates that the parties had a "full and fair" opportunity to litigate the initial determination. As distinguished from issue preclusion and claim preclusion, however, law of the case addresses the potentially preclusive effect of judicial determinations made in the course of a single litigation *before* final judgment (*People v Evans*, 94 NY2d 499, 502 [2000]; *see also Royal Host Realty LLC v 753 Ninth Ave. Realty, LLC*, 2020 WL 209991, *6 [Sup Ct, NY County 2020] ["[i]t is undisputed that a federal court decision following removal from a state court can be law of the case, after remand back to state court"]).

This court finds that the law of the case doctrine applies to Judge Cote's determination regarding the identity of comparators.

The case before the court was litigated from the very beginning on plaintiff's theory that Defendants violated the right of Plaintiff to be paid the same as male and white employees performing equal work (*see* complaint, filed October 18, 2021; NYSCEF Doc. No. 004). Roberson presented the identical claims to the federal court (*see* memo in reply at 4 *citing Roberson v New York City Health and Hospitals Corporation,* 21 Cv. 8770, Dkt. No. 7) and to this court again in the 2023 complaint.

First, the court notes that the October 18, 2021 complaint, originally filed in state court before being removed to federal court, and the February 27, 2023 complaint that commenced this action, are virtually identical. They contain identical six causes of action, and the facts set forth in both are the same. The distinction is the addition of Albertson as a defendant in the newer complaint. Second, there is no indication in the parties' submissions that Roberson appealed the ruling of Judge Denise Cotes.

Roberson argues in opposition that the action before Judge Denise Cote in the Southern District of New York is a separate action. This court disagrees. The facts set forth in the complaint that commenced the October 18, 2021 state action, *Roberson v New York City Health and Hospitals Corporation*, are identical to those set forth in the complaint in this action currently before the court. Since the 2021 complaint contained two claims pursuant to federal law, the complaint was removed to federal court. In the federal action, the parties expended time and money engaging in discovery based upon these same facts and issues. The parties' endeavors in discovery resulted in the identification of "a single comparator," Yelena Grinberg, with respect to the fifth cause of action, alleging a violation of the Equal Pay Act, 29 USC § 206 and the New York Equal Pay Law, § 194.

Roberson further argues that the distinction between the Equal Pay Act, 29 USC § 206 (d) (1) and NYLL Section 194 is that the federal law only addresses gender discrimination, and mandates that law of the case is not applicable here. The court again disagrees. Judge Cotes heard oral argument and reviewed documentary evidence on the question of who reported to the same supervisor and held a position with comparable duties and responsibilities to Roberson. According to the Transcript, this investigation by the Judge was not limited by gender or race. Notably, Judge Cote is a judge of coordinate jurisdiction, and the parties did not appeal Judge Cote's decision. As this matter is effectively the same action as that before Judge Cote, this court may not undo that decision. The court, therefore, finds that the ruling of Judge Cote concerning the question of comparators is law of the case (*see Kimmel v State*, 261 AD2d 843, 844 [4th Dept 1999]).

## 2.     The Timeliness of Roberson's Claims Pursuant To The SHRL And The CHRL

Defendants argue that Roberson's discrimination claims that accrued prior to October 18, 2018 and were brought under the State Human Rights Law ("SHRL") and the New York City Human Rights Law ("CHRL") are time barred. These claims are subject to a three-year limitations period (N.Y. Exec. Law § 297 (9); N.Y.C. Admin. Code).

Roberson's claims are based upon incidents that began in 2013 and conclude in 2021. The facts regarding Grinberg rely on data from 2019. On this motion to dismiss, the court will not make a finding of whether these acts were part of a continuing pattern or were separate incidents, but will permit the claims to go forward towards a possible future dispositive motion or trial (*see Petit v Department of Educ. of the City of N.Y.*, 177 AD3d 402, 403 [1st Dept 2019][ "we cannot say, as a matter of law, "that these acts, if proven, were not part of a single continuing pattern of

unlawful conduct extending into the one-year period immediately preceding the filing of the complaint"]).  In any event, plaintiff "is not precluded from using the prior acts as background evidence in support of a timely claim" (*id.*).  These same allegations, accepted as true, also show discriminatory conduct within the limitations period sufficiently similar to the alleged conduct without the limitations period to justify the conclusion that both were part of a single discriminatory practice, and that plaintiff's claim is therefore timely in its entirety under the continuing violation doctrine (*see, McKenney v New York City Off-Track Betting Corp.,* 903 F Supp 619, 622, citing *Cornwell v Robinson,* 23 F3d 694).  Roberson's claims likewise rely on circumstances that occurred both before and after the three-year limitations period.

Additionally, according to defendants' submission, because Roberson commenced this action in October 2021, and because the relation back doctrine cannot be applied against Albertson, those earlier claims are time-barred.

Under the relation-back doctrine of CPLR 203 (b) and (c), new parties may be joined as defendants in a previously commenced action, after the statute of limitations has expired on the claims against them (*Higgins v City of New York*, 144 AD3d 511, 513 [1st Dept 2016]).  In order for her claims against Albertson to relate back to her original filing, Roberson must establish: (1) that the claims arise from the same transaction or series of transactions; (2) that Albertson and original defendant NYCHHC have a unity of interest; and (3) that Albertson, as the putative new party, knew or should have known that, but for Roberson's mistake as to who were the proper parties, he would have been named in the original complaint (*Higgins,* 144 AD3d at 513).

The claims arise from the same transaction, specifically, the conditions of Roberson's employment at NYCHHC when she was a Category Director in Supply Chain Services.  Second, Albertson had unity of interest with NYCHHC as he recruited Roberson into Supply Chain

[* 12]

Services and was one of Roberson's supervisors. "A unity of interest will be found where there is some relationship between the parties giving rise to the vicarious liability of one for the conduct of the other" (*Vanderberg v Brodman*, 231 AD2d 146, 147 [1st Dept 1997]). "The classic test for determining unity of interest is whether the defenses between the parties are the same such that their interests stand or fall together" (*Ellis v Newmark & Company Real Estate, Inc*., 209 AD3d 520, 521 [1st Dept 2022]).

This court finds that plaintiff's claims as against Albertson are not time-barred and, thus, denies this portion of defendants' motion.

### 3. Facts Sufficient To State A Claim Of Discrimination

Defendants move, pursuant to CPLR 3211 (a) (7), on the ground that the complaint fails to state a cause of action. Specifically, defendants argue that Roberson's gender, race and disability claims must be dismissed as she fails to allege any adverse employment actions and/or set forth any facts supporting an inference that defendants were motivated by discriminatory animus on the basis of Roberson's protected characteristics.

"On a CPLR 3211 motion to dismiss, the court will 'accept the facts as alleged in the complaint as true, accord plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory'" (*Nonnon v City of New York*, 9 NY3d 825, 827 [2007]). While a plaintiff need not plead a *prima facie* case at the pleading stage, she must allege sufficient facts that would allow the Court, in substance, to infer the elements of a *prima facie* case (*see Vig v New York Hairspray Co., L.P*., 67 A.D.3d 140, 145 [1st Dep't 2009]). Additionally, "employment discrimination cases are themselves generally reviewed under

notice pleading standards" (Ortiz v City of New York, 105 AD3d 674, [1st Dept 2013] citing *Vig*, 67 AD3d at 145). Thus, in employment discrimination cases, the First Department will not dismiss a claim for its lack of specificity: "For example, under the Federal Rules of Civil Procedure, it has been held that a plaintiff alleging employment discrimination "need not plead [specific facts establishing] a *prima facie* case of discrimination" but need only give "fair notice" of the nature of the claim and its grounds (id.). In "[a]pplying these liberal pleading standards," (*id.*) the First Department affirmed the lower court's determination that the plaintiff had stated causes of action for employment discrimination under both the State and City Human Rights Laws (*id*.).

Under the State Human Rights Law (:SHRL"), a plaintiff alleging such discrimination must show that (1) she or he is a member of a protected class, (2) she or he is qualified to hold the position, (3) she or he suffered an adverse employment action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination (*Golston-Green v City of New York*, 184 AD3d 24, 36 [2d Dept 2020] citing *Stephenson v Hotel Empls. & Rest. Empls. Union Local 100 of AFL-CIO*, 6 NY3d 265, 270 [2006]). (*see* Executive Law § 296; Administrative Code § 8-107; *Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 305 [2004]; *O'Halloran v Metro. Transp. Auth.*, 154 AD3d 83, 100-101 [1st Dept 2017] ).

Allegations are sufficient to sustain a cause of action for race discrimination pursuant to the SHRL where they allege that plaintiff was a qualified member of a protected class and suffered an adverse employment action, "including *inter alia* being terminated after having her work injury hearing delayed for approximately 9 months, based upon her race" (*see McGuinness v Concentric Health Care LLC,* 116 AD3d 527, 527–28 [1st Dept 2014]).

[* 14]

Under the City Human Rights Law, "in order to demonstrate liability, a plaintiff need not establish that she or he was subjected to a 'materially adverse' change to terms and conditions of employment, but only that she or he was subject to an unfavorable change or treated less well than other employees on the basis of a protected characteristic" (*Golston-Green*, 184 AD3d at 48).

> "The 'materially adverse' standard effectively acts as a bar under which an employee may suffer a host of adverse employment actions due to discrimination but have no recourse under the discrimination law if the discriminatory conduct did not result in a loss of wages, title, benefits, or responsibilities. This result is entirely inconsistent with the broad remedial purposes of the City Human Rights Law to eradicate discriminatory conduct in the workplace. In contrast to the materially adverse standard, a rule by which liability is determined simply by the existence of adverse differential treatment furthers the City Human Rights Law's deterrent purposes"

(*id.*).

According to defendants, the vast majority of Roberson's allegations do not "amount to actionable employment events" (memo in support at 15). Defendants argue that Roberson's allegation that she was micromanaged (complaint, ¶ 55); instructed to report her disability to EEO (complaint, ¶ 147); had her office moved (complaint, ¶ 90); and received a meeting invite to discuss her work performance (complaint, ¶ 168) do not rise to the level of actionable employment events (memo in support at 15 citing *Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 305 [2004])

A plaintiff alleging racial discrimination in employment has the initial burden to establish a *prima facie* case of discrimination (*Forrest*, 3 NY3d at 305). "To meet this burden, [a] plaintiff must show that (1) she is a member of a protected class; (2) she was qualified to hold the position; (3) she was terminated from employment or suffered another adverse employment action; (4) the discharge or other adverse action occurred under circumstances giving rise to an inference of discrimination (*Forrest*, 3 NY3d at 305 [internal citation omitted]).

[* 15]

The Court of Appeals has described with specificity what constitutes an adverse employment action:

> "An adverse employment action requires a materially adverse change in the terms and conditions of employment. 'To be materially adverse, a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation'"

(*Forrest*, 3 NY3d at 307 [internal citation omitted]).

Alleged mistreatment, such as "[t]he snatching of a pad from her hands, the patting of a seat in an allegedly humiliating way, the shouting at her in a meeting, the circling of her name on a time sheet, the rolling of eyes when she spoke—none of these constitutes a materially adverse change in the terms and conditions of plaintiff's employment," does not arise to the level of an adverse employment action" (id., at 307 *citing Fridia v. Henderson*, 2000 WL 172779 [SD NY 2000] [excessive work, denials of requests for leave with pay and a supervisor's general negative treatment of plaintiff are not materially adverse changes in terms of conditions or privileges of employment]; *Katz v. Beth Israel Med. Ctr.*, 2001 WL 11064, at *9 [SD NY Jan 3, 2011] ["[b]eing yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments do not rise to the level of adverse employment actions"]).

In order to prevail on a salary discrimination claim, the plaintiff must also prove that the comparators are "similarly situated," in "all material respects." *Shah v. Wilco Sys., Inc .*, 27 AD3d 169, 177 [1st Dept 2005]). It is not enough to show that the employees' duties are "analogous" (*id.*). Further, it is essential for the plaintiff to demonstrate that similarly situated employees are paid more (*id.*). An employer is "well within its rights in considering the marketplace value of [an

[* 16]

employee's] skills when determining his salary" (*Kent v. The Papert Cos.,* 309 A.D.2d 234, 244 [1st Dept 2003]).

An inference of discrimination is a "flexible standard that can be satisfied differently in differing factual scenarios" (*Sethi v Narod*, 12 F Supp 3d 505 [ED NY 2014], citing *Howard v MTA Metro-N. Commuter R.R.*, 866 F Supp 2d 196 [SD NY 2011]). "A showing of disparate treatment—that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case" (M*andell v County of Suffolk*, 316 F3d 368, 379 [2d Cir 2003], quoting *Graham v Long Island R.R.*, 230 F3d 34, 39 [2d Cir. 2000]). "A plaintiff relying on disparate treatment evidence 'must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself'" (*id.*).

Roberson alleges that defendants took actions against her to "promote the careers of white, male employees instead of hers, and to hinder her advancement in the organization and in her career, and they took these actions because of [Roberson's] race, gender, and/or disability, and in retaliation for her challenges to [defendants'] unequal pay practices" (Complaint, ¶ 93). Roberson alleges the following adverse employment actions:

- Defendant Albertson's attributing Plaintiff's achievements to a male co-worker. *See* Compl., ¶¶ 44-55.

- Being tasked with considerably greater job responsibility, but with no commensurate pay increase. *See* Compl., ¶¶ 66-70 (given responsibility for more hospitals, but no pay increase); ¶¶ 119-123 (expanded responsibilities because of COVID-19, but no pay increase).

- Being the subject of a 2020 memo falsely claiming that Plaintiff had not incurred additional responsibilities since 2017. *See* Compl., ¶ 135.

- Being removed from a project near completion by Defendant Albertson, who gave the same project to a male colleague. *See* Compl., ¶¶ 71-78.

- Being excluded from multiple meetings critical to the performance of her job. *See* Compl., ¶¶ 90-93.

- Being excluded from even applying for jobs with the same responsibilities as Plaintiff's job that would have automatically resulted in a pay increase. *See* Compl., ¶¶ 124-26.

[* 17]

• Being shunned and ignored by Defendant Albertson, which "adversely affected Plaintiff's ability to do her job, and to obtain his signature on crucial forms and reimbursements." *See* Compl., ¶¶ 127-131 (Defendant Albertson childishly hides from Plaintiff to avoid her); *See* Compl., ¶ 141 (Defendant Albertson refuses to respond to Plaintiff's emails).

• Being discriminated against because of her disability, as well as in "retaliation for Plaintiff's complaints and demands concerning Defendant NYCH+H's practices of denying her and others equal pay." *See* Compl., ¶ 154.

• Defendant Albertson's sabotaging Plaintiff's reimbursement form and questioning the legitimacy of common work-related expenses. *See* Compl., ¶¶ 155-57.

• Defendant Albertson's gratuitous scrutiny of Plaintiff's timesheets. *See* Compl., ¶¶ 158-64"
(memo in opp., at 16-17; NYSCEF Doc. No.: 016).

Roberson further argues that her unequal pay claim provides a basis for inferring a discriminatory basis for the "foregoing adverse employment actions," including extensive documentation of pay disparities on the basis of both race and gender, with reference to both nonfemale and non-Black comparators. *See* Compl., ¶¶ 32-38; 44-55; 79-85; 181-185.

Additionally, in support of her argument that she suffered valid adverse employment action, Roberson cites to the spreadsheet that was the subject of the oral argument, and decision, before Judge Cote:

> "the Complaint includes spreadsheet data over three pages concerning eleven individuals not members of Plaintiff's protected classes but in substantially similar jobs who were either paid more, received greater and more frequent pay increases, or both. *See* Compl., ¶ 181. Additionally, the Complaint contains extensive and detailed allegations about a particular White male colleague not subjected to discrimination (*see* Compl., ¶¶ 44-55); a White female colleague with less experience who was paid more and treated more favorably than Plaintiff (*see* Compl., ¶¶ 79-85); and numerous Black female colleagues who corroborate Plaintiff's experience and provide additional basis for reasonable inferences of race and gender discrimination (*see* Compl., ¶¶ 86-89)."

(memo in opp at 13).

> "Plaintiff failed to plead any facts showing that she was treated differently because of her race, religion, or national origin. At the outset, the complaint did not allege that any of plaintiff's colleagues or supervisors made any explicitly or implicitly invidious comments about her race, religion, or country of origin. Plaintiff claimed that on one occasion a supervisor stated to her that she was being mistreated by a different supervisor because of her race. However, "[s]tray remarks such as [this], even if made by a decision maker, do not, without more, constitute evidence of discrimination."

(*Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 125, 946 N.Y.S.2d 27 [1st Dept. 2012]).

[* 18]

Initially, according to Roberson's complaint, she is a member of protected classes on the basis of her race and gender, and she was qualified for her position. Further, based upon Roberson's complaint, drawing all inferences in her favor, she is able to establish that she suffered an adverse employment action within the meaning of the SHRL. Again, under the SHRL, an adverse employment action includes: ""a materially adverse change in the terms and conditions of employment.' Such change must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities,' such as 'a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities'" (*Golston-Green v City of New York*, 184 AD3d 24, 37 [2d Dept 2020][internal citations omitted]).

In her complaint, Roberson alleges that she was subject to adverse employment actions For example, Roberson alleges that she was excluded from even applying for jobs with the same responsibilities that would have automatically resulted in a pay increase were Plaintiff paid commensurate with those who were hired; defendant Albertson "sabotaged" Plaintiff's reimbursement form and questioned the legitimacy of common work-related expenses; she was given "considerably greater" job responsibility, but with no commensurate pay increase; and Defendant Albertson's attributing Plaintiff's achievements to a male co-worker or giving her projects to a male co-worker. These alleged actions would have altered the terms and condition of Roberson's job and deprived Roberson of promotion, pay or benefits, or might have "significantly diminished" her material responsibilities. Accordingly, this court does not dismiss these claims.

Under the NYCHRL, a plaintiff must demonstrate that they were subjected to an unfavorable employment change or treated less well than other employees on the basis of a protected characteristic (*see Golston-Green*, 184 AD3d at 36). Additionally under the City Human Rights Law, "in order to demonstrate liability, a plaintiff need not establish that she or he was subjected to a 'materially adverse' change to terms and conditions of employment, but only that she or he was subject to an unfavorable change or treated less well than other employees on the basis of a protected characteristic" (*Golston-Green*, 184 AD3d at 48).

Based upon the allegations in Roberson's complaint, and accepting those allegations as true, pursuant to the standard of review of a motion to dismiss, she is able to establish adverse employment actions under the NYSHRL. As outlined above, Roberson's allegations that include defendants preventing Roberson from applying for a promotion; not paying her proper wages; not being reimbursed for expenses; and either giving her work to male employees; or crediting male employees for her accomplishments on the job, meet the bare requirements to establish this claim.

The court finds that Roberson is able to allege that this treatment was taken on the basis of a protected characteristic, her race, and that the action gave rise to an inference of discrimination, under the CHRL. In order to make this showing of disparate treatment, Roberson's complaint does not allege that any of her colleagues or supervisors made any explicitly or implicitly invidious comments about her race or gender. Instead, Roberson alleges that defendants afforded a white female, Grinberg, in her department and similarly situated, raises that defendants barred her from. Again, based upon the prior ruling of Judge Cote, the court finds that the only comparator in her proof that was similarly situated to her was Grinberg.

[* 20]

Roberson cannot establish with respect to the other comparators in her proof that they were similarly situated to her, as she must, in order to set forth a *prima facie* claim (*see Etienne v MTA New York City Transit Authority*, 223 AD3d 612, [1st Dept 2024][First Department grants defendant's motion to dismiss plaintiff's employment discrimination claims]). In *Etienne*, the First Department observed that plaintiff was arguing that she "was the subject of disparate treatment as compared to her white and Jewish coworker who was allegedly not subject to any scrutiny, was repeatedly promoted, and was permitted to work overtime" (223 AD3d at 612). Yet, the Court found that plaintiff Etienne was unable to demonstrate that she and her colleague were "similarly situated in all material respects" (*id.*). The Court noted that "[t]here were no allegations that she had the same job title as plaintiff, had the same responsibilities or job requirements as plaintiff, report to the same supervisors, or that she was even employed in the same unit as plaintiff" (*id.* at 612-613).

Although the legal claims under Title VII, the SHRL and the CHRL, are not the same, Robeson is employing the same factual allegations to establish her SHRL and CHRL claims, as were proffered before Judge Cote. Judge Cote heard the evidence concerning the duties and responsibilities of those same comparators and ruled that they were not similarly situated to Robeson. As the law of the case, this court finds that Robeson is unable to use comparators, other than Grinberg, to establish her claims of race and gender discrimination under the SHRL and the CHRL as they are not similarly situated to Robeson. According to the organizational chart reviewed by Judge Cote, Grinberg and Robeson are both listed as employees under the heading "Supply Chain Professional Services Contract," both reporting to Mercedes Redwood. There are four divisions at NYCHHC that reported to Albertson, including Robeson's division, "Supply

[* 21]

Chain Professional Services Contract." Robeson's alleged treatment compared with that alleged about Grinberg is sufficient to provide notice of a claim under the SHRL and the CHRL.

As a result, at this early stage in the litigation, prior to any discovery, the court will not grant defendants' motion to dismiss on this ground.

### 4. Disability Discrimination

Finally, although Roberson articulates a claim in her complaint of discrimination based upon a disability, she does not include any facts supporting, or arguments declaring, a claim of discrimination based upon a disability.

"Under the State HRL, if an employee has a physical impairment that prevents the employee from performing the core duties of his or her job even with a reasonable accommodation, the employee does not have a disability covered by the statute, and consequently, the employer is free to take adverse employment action against the employee based on that impairment" (*Jacobsen v New York City Health and Hosps. Corp*., 22 NY3d 824, 833-834 [2014]).

"On the other hand, if a reasonable accommodation would permit the employee to perform the essential functions of the employee's position, the employee has a 'disability' within the meaning of the statute, and the employer cannot disadvantage the employee based on that disability" (*Jacobsen*, 22 NY3d at 833-834).

Finally, the Court of Appeals has held that "the State HRL forbids employment discrimination on the basis of an employee's disability, and the City HRL provides even greater protection against disability-based discrimination" (*id.*). The employee's complaint states a *prima facie* case of discrimination under both the State HRL and City HRL if the employee suffers from

[* 22]

a statutorily defined disability and the disability caused the behavior for which the employee was terminated (*id*.).

Here, Roberson is not alleging that she had a disability that required a reasonable accommodation in order for her to complete her job duties. In fact, in the complaint, Roberson alleges that she did not require an accommodation for her herniated discs: "[Roberson] reminded AVP Redwood that although she was diagnosed with three herniated disks, she never let this interfere with her job responsibilities, even if it meant she was in pain . . . [and] that if she had been given advance notice that she was wanted for these walk-throughs, she could have made arrangements for a pain management injection" (*id*. at 33).

Consequently, Roberson does not have a disability under the law that requires an accommodation, and, therefore, is unable to articulate a claim of discrimination on this ground. The court dismisses Roberson discrimination based upon the ground of disability.

### 5. Roberson's Claim Of Hostile Work Environment

Defendants argue that Roberson's allegations of a harassing environment are conclusory; are not of sufficient severity or such a continuous pattern to create a hostile work environment; and do not amount to more than "petty slights and trivial inconveniences" under the CHRL (*see Whitfield Otiz v Dep't of Educ. of City of N.Y.*, 116 A.D.3d 580, 581 [1st Dep't 2014]); *Perry v Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir 1997) (holding that "[I]solated acts, unless very serious, do not meet the threshold of severity or pervasiveness").

In opposition, Roberson points out that in her complaint, she alleges that multiple incidents contributed to a hostile work environment based on her gender, race, and disability. She refers again to the list of alleged adverse employment actions that she endured, as set forth on pages 11 and 12 of her memo in opposition. Those allegations include: "being removed from a project near

[* 23]

completion by Defendant Albertson, who gave the same project to a male colleague" (*see* complaint, ¶¶ 71-78; "being excluded from multiple meetings critical to the performance of her job" (*see* complaint, ¶¶ 90-93); and "being excluded from even applying for jobs with the same responsibilities as [Roberson's] job that would have automatically resulted in a pay increase were [Roberson] paid commensurate with those who were hired" (*see* complaint, ¶¶ 124-26). Roberson argues, "[i]ndividually and cumulatively, therefore, the actions alleged in the Complaint created a hostile work environment for Plaintiff and establish that Plaintiff was 'treated less well than other employees because of her gender'" (memo in opp at 16[internal citation omitted]).

In the complaint, Roberson alleges that after she repeatedly "reported to Defendants about Defendants' unequal pay practices," defendants, in retaliation, subjected Roberson to "a series of adverse employment actions including, but not limited to, subjecting [Roberson] to the denial of a promotion, a hostile work environment . . . ." (complaint, ¶¶ 217-219).

Roberson alleges that between 2018 and 2020, she was denied access to meetings, including a meeting for which she had written the Request for Proposal. She more specifically alleges that in August 2019, October 2019 and January 2020, she asked Albertson and Redwood for a pay increase. In August 2019, Roberson sent an email to Albertson requesting that he ask Human Resources to do a 'parity assessment' (complaint, ¶ 103). She believed that by making this request, she was reporting to Albertson her belief that she was a "victim of race and gender discrimination . . . ." (*id*., ¶ 105). At this point, Roberson alleges that Albertson "began ignoring plaintiff's emails, passing by plaintiff without speaking, and making AVP Redwood relay his messages to Plaintiff" (*id*., ¶ 106).

[* 24]

According to the complaint, in August 2020 Roberson alerted Albertson to "the obvious disparities in her own salary and the discriminatory failure to give her a salary increase." Albertson soon thereafter "created a hostile work environment for [Roberson] (complaint, ¶ 141-142). According to the complaint, Roberson alleges that "he glared at her, refused to acknowledge her when he walked by her, did not come to her office, and stopped speaking to her altogether. He also utterly refused to respond to her emails, until she copied his supervisor or other Cabinet-level staff on the emails she sent him" (*id.*, ¶ 141) The complaint continues: "[t]he shunning and ignoring of [Roberson] that Defendant VP Albertson engaged in adversely affected [Roberson's] ability to do her job, and to obtain his signature on crucial forms and reimbursements" (*id.*, ¶ 142). This also made "[Roberson] extremely fearful for her job, especially because Defendant VP Albertson behaved the same way to Jackie Gelly, another Black female in the department" who was later terminated (*id.*).

Roberson further alleges that in retaliation for her demand for a pay increase, on or about August 26, 2020, Albertson placed the reimbursement form, that Roberson had placed in his mailbox, into the wrong mail box, not his, "in order to deny that he had seen the form, and therefore deny, or delay, the reimbursement for Plaintiff's travel" (complaint, ¶ 156). Even after Roberson "politely" informed Albertson that she re-placed it in his mailbox, he continued to deny having seen it (*id.*, ¶ 157). When Albertson finally looked at the form, he crossed off the word "overseeing," because this was "not a responsibility of hers" (*id.*, ¶ 158). Roberson alleges that she had many responsibilities that are termed as "overseeing" and although she sent an email to Albertson to this effect, he never responded (*id.*, ¶ 159).

Roberson additionally alleges that in retaliation for her pay increase demand, on about August 27, 2020, Redwood sent an email to Roberson stating that she would "not approve" plaintiff's timesheet, because "Roberson had stayed at the office until 8:00 p.m. to complete her expense reports" (id. at ¶ 160). According to the complaint, there was no "rational reason" why Redwood would object to Roberson's hours as she "had worked late into the night on many other occasions besides this one, and this was done by numerous other employees as well. Just as importantly, [Roberson] was on salary and was not an hourly worker . . . ." (id. at ¶ 162).

To state a claim for a hostile work environment under the SHRL, a plaintiff must allege the existence of a workplace so "permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter the conditions of [her] employment" *Ferrer v New York State Div. of Human Rights*, 82 AD3d 431 [1st Dept 2011] (*citing Harris v Forklift Sys.*, 510 US 17 1993); *see also Forrest v Jewish Guild for the Blind*, 3 NY3d at 310-11 ("Whether an environment is hostile or abusive can be determined only by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance").

Under the CHRL, "[c]ourts . . . continue to recognize that the law does not operate as a 'general civility code,' and conduct which is 'nothing more than what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences' is not actionable" *Mahoney v. Metro. Tr. Auth.*, 2014 N.Y. Slip Op. 32774(U), at *18 [Sup Ct, NY Cty 2014] [*quoting Williams v N.Y.C. Hous. Auth.*, 61 AD3d 62, 79-80 [1st Dept 2009]; *see also Matter of Troy B. (Troy D.)* 121 AD3d 570, 570 [1st Dept 2014] [plaintiff's "conclusory hostile work environment

[* 26]

claims also fail because defendants' alleged behavior amounts to no more than petty slights or trivial inconveniences"]).

Under both the SHRL and CHRL, a failure to plead discriminatory animus is "fatal to . . . claims of hostile work environment" (*Pelepelin v City of New York,* 189 AD3d 450, 451-452 [1st Dept 2020]; *Askin v Department of Educ. of the City of N.Y.,* 110 AD3d 621, 622 [1st Dept 2013]; *Toth v New York City Dep't of Citywide Admin. Servs.*, 119 AD3d 431 [1st Dept 2014]). New York courts will find that a complaint has failed to state a cause of action for hostile work environment under the CHRL (Administrative Code of City of N.Y. § 8–107), when it does not allege that respondents' actions occurred under circumstances that give rise to an inference of discrimination (*Wolfe-Santos v NYS Gaming Comm.*, 188 AD3d 622 [1st Dept 2020]).

On October 12, 2019, the SHRL was amended to eliminate the "severe or pervasive" standard to hostile work environment claims (*see* Executive Law § 300; L 2019, ch 160, § 6, eff August 12, 2019). The amendment does not have retroactive effect (*see Pease v The City of New York*, 2022 WL 3336139 [Sup. Ct. N.Y. County 2022]). Thus, the "severe or pervasive" standard would apply to Plaintiff's claims that occurred before October 12, 2019.

In *Pelepelin,* the First Department found that the plaintiff's allegations that defendants made "derogatory comments" to him were not sufficient to satisfy the claims (*Pelepelin v City of New York*, 189 AD3d 450, 451-452[1st Dept 2020]). The court held that the "only derogatory remarks identified by plaintiff, for instance, that he was "too intimidating for the Mayor's family," "do not evince any ageist or anti-Russian bias," as alleged by the plaintiff therein (*Pelepelin*, 189 AD3d at 451).

[* 27]

The First Department found that plaintiff's hostile work environment claim failed where the complaint alleged that her supervisors "regularly and unjustifiably criticized her work, refused to permit overtime or lunchtime work, pressured plaintiff to complete assignments in an unrealistic time frame, and were disrespectful and yelled at her three times over the course of her employment" (*Etienne v MTA N.Y. City Tr. Auth.*, 223 AD3d 612, 613 [1st Dept 2024]). Even assuming that the alleged acts or omissions amounted to more than petty slights and trivial inconveniences, "the evidence is not sufficient to establish that plaintiff's supervisors' behavior was motivated because of her protected status, such as her race, religion, or national origin" (*id.*).

Here, Roberson alleges that defendants contributed to a hostile work environment based on her gender, race, and disability. According to the complaint, Roberson alleges that each time she expressed her concerns that her salary was based upon her race, she experienced a backlash of isolation that affected her ability to do her work. Although some of the incidents alleged in her complaint might amount to petty slights and inconveniences, taken together, (including being ignored and disregarded by Albertson), this court finds that these allegations are sufficient to support a claim of a hostile work environment. On a motion to dismiss, the court must accept plaintiff's claims as true and resolve all reasonable inferences in her favor. Furthermore, employment discrimination cases are generally reviewed under notice pleading standards, and the First Department will not dismiss a claim outright due to lack of specificity. Thus, for example, it is not fatal to Roberson's claim that she does not allege the details of Grinberg's salary. It would, therefore, be premature, on this motion to dismiss, for this court to find that Roberson has no chance of making out a claim of hostile work environment under the SHRL or the CHRL. Accordingly, defendants' motion to dismiss on this ground is denied.

[* 28]

### 6. Roberson's Claim Of Retaliation

Defendants argue that Roberson fails to allege facts "that suggest, much less establish" that any of the alleged adverse actions constitute actions that would dissuade a reasonable person from making a charge of discrimination.

In order to state a claim for retaliation under the New York State Human Rights Law (Executive Law § 296), a plaintiff must show that they were: (1) engaged in a protected activity, (2) [her] employer was aware that [she] participated in such activity, (3) [she] suffered an adverse employment action based upon [her] activity, and (4) there is a causal connection between the protected activity and the adverse action (*Hershkowitz v State*, 222 Ad3d 587, 587-588 [1st Dept 2023]). Under NYCHRL, a plaintiff need not show that they suffered a materially adverse action, but must instead show that the employer's conduct was "reasonably likely to deter a person from engaging in protected activity" (*Davis v Metropolitan Trans. Auth.*, 2012 WL 797626, *10 [SD NY March 6, 2012][*citing* NYC Admin Code § 8–107(7); *Williams v Tischman Speyer Props. LP*, 62 AD3d 71 [1st Dept 2009]).

"'The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action'" *Hershowitz v State*, 222 AD3d 587 [1st Dept 2023][internal citations omitted]).

In *Etienne v New York City Transit Auth.*, the plaintiff alleged that after she filed a notice of claim as well as a charge of discrimination, her supervisors instituted a rule "where she was required to clock out during her lunch hour and enforced the agency's overtime cap" (*Etienne*, 223 AD3d 612, [1st Dept 2024]). The Court held that plaintiff failed to plead sufficient facts as to why "these mandates would dissuade a reasonable employee from complaining about discrimination or why it constituted anything more than a trivial harm" (*Etienne*, 223 AD3d at 613).

[* 29]

In *Gonzalez*, the plaintiff failed to state a claim for retaliation, as his general complaints of mistreatment and harassment did not convey that he had complained of unlawful discrimination (*see Gonzalez v. EVG, Inc.,* 123 AD3d 486, 487 [1st Dept 2014]).

Here, Roberson has alleged a *prima facie* claim of retaliation. Roberson alleges that in July of 2020 she received a memo from Human Resources denying her request for a raise, since she "had not incurred additional increased responsibilities in her job since 2017" (Complaint, ¶135). Roberson believed that this information got to Human Resources via Albertson. She alleges that in August 2019, when she asked Albertson to seek a parity assessment on her behalf, she believed she was reporting her belief that she was a victim of race and gender discrimination, and, at that time, he began to ignore her emails. She then alleges that in August 2020, she alerted Albertson about the "the obvious disparities in her own salary and the discriminatory failure to give her a salary increase." Under both the State and City Human Rights Laws, it is unlawful to retaliate against an employee for opposing discriminatory practices. This complaint by Roberson is therefore a protected activity. She then alleges that very close in time, Albertson's negative treatment to isolate her intensified. She alleges that he ignored her, glared at her and stopped talking to her altogether. This, according to the complaint, made Roberson extremely anxious and affected Roberson's ability to do her job. Due to the close proximity in time between the August 2019 and then the August 2020 complaints and Albertson's corresponding worsening treatment, the Court finds, at this early stage in the litigation, enough support for a finding of causation between the two (*see La Porta v Alacra, Inc*., 142 AD3d 851 [2016][allegations of being rebuffed and isolated by defendant's management sufficiently stated disadvantageous actions by defendants as a result of plaintiff's complaints to management]).

[* 30]

Roberson's allegations raise questions about whether there were adverse employment actions, including failure to receive an appropriate wage. This supports Roberson's claim under the SHRL. As the CHRL does not require an adverse employment action, but only evidence that the employer's conduct would dissuade an employee from complaining about discrimination, this court finds that these allegations additionally satisfy Roberson's claim for retaliation pursuant to the CHRL. On these grounds, defendants' motion to dismiss plaintiff's claim of retaliation is denied.

For all the reasons set forth herein, it is hereby:

**ORDERED** that defendants' motion to dismiss is granted solely to the extent that the ruling of Judge Cote concerning the question of comparators is the law of the case, therefore, limiting the identified comparator to Yelena Grinberg; and it is further

**ORDERED** that the remainder of defendants' motion is denied; and it is further

**ORDERED** that defendants must file an Answer within 20 days of the filing of this Order with a notice of entry.

Dated: November 30, 2024

_____
HON. J. MACHELLE SWEETING, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | | GRANTED IN PART | x | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

[* 31]